28 P.3d 982

Naomi M.L.K. GUTH, Malcolm Akiona, Lawrence Akiona, Darryl Akiona, Dennis Akiona, Matthew Akiona, and Alberta Alphin, Plaintiffs–Appellants,

v.

Haines Burt FREELAND, dba Special Services and Accommodation; Howard Tagomori, As Maui County Chief of Police and As Coroner for Maui County; County of Maui; Maui Memorial Hospital; Clinical Laboratories of Hawaii, Inc., Defendants–Appellees,

and

John Does 1–10; Jane Does 1–10; Doe Partnerships 1–10; Doe Corporations 1–10 and Doe Governmental Entities 1–10, Defendants.

No. 22539.

Supreme Court of Hawai'i.

July 31, 2001.

Greg H. Takase, on the briefs, for plaintiffs-appellants.

Victoria J. Takayesu, Deputy Corporation Counsel, on the briefs, for defendants-appellees Howard Tagomori and County of Maui.

Joel E. August, Wailuku, of Lowenthal & August on the joinder, on the briefs, for defendant-appellee Haines Burt Freeland.

Laurie E. Keeno, Honolulu, on the briefs, for defendant appellee Maui Memorial Hospital.

MOON, C.J., LEVINSON, NAKAYAMA, and RAMIL, JJ. and ACOBA, J., Concurring in part and Dissenting in part.

Opinion of the Court by NAKAYAMA, J.

Plaintiffs-appellants Naomi Guth, Malcolm Akiona, Lawrence Akiona, Darryl Akiona, Dennis Akiona, Matthew Akiona, and Alberta Alphin (collectively, Plaintiffs) appeal from the final judgment of the Circuit Court of the Second Circuit, the Honorable Shackley Raffetto presiding, entered pursuant to an order granting summary judgment in favor of defendants-appellees Haines Freeland, dba Special Services and Accommodation (Freeland), the County of Maui, and Maui Memorial Hospital (MMH) (collectively, Defendants). Plaintiffs' suit arose from Defendants' allegedly negligent handling of the body of Plaintiffs' deceased mother, Barbara Akiona (Akiona). The circuit court granted summary judgment in favor of Defendants as to Plaintiffs' negligent infliction of emotional distress (NIED) claim because it was barred by Hawai'i Revised Statutes (HRS) § 663–8.9 (1993). On appeal, Plaintiffs argue that the circuit court erred in granting summary judgment in favor of Defendants because HRS § 663–8.9 does not apply to NIED claims arising from the negligent mishandling of a corpse. In the alternative, Plaintiffs argue that this court should adopt the rule stated in the Restatement (Second) of Torts § 868 (1979). We hold that HRS § 663–8.9 does not apply to an NIED claim arising from the negligent mishandling of a corpse. Therefore, we vacate the circuit court's order granting summary judgment in favor of Defendants and the judgment entered pursuant thereto and remand the case for further proceedings.

## I. BACKGROUND

Akiona was admitted to MMH on September 22, 1995. The next day, she passed away, and Freeland transported her body to the morgue for refrigeration pending testing and a possible autopsy. The morgue is located in MMH. Akiona was considered a coroner's case and was therefore in the custody and control of Maui County. Plaintiffs allege that Defendants negligently failed to refrigerate Akiona's body, causing it to decompose.

Prior to her death, Akiona entered into a contract with Maui Funeral Plan, Inc., which provided for the removal of her body from the hospital, professional embalming, a casket, use of the funeral home facilities, a car and driver to the cemetery, and funeral arrangements by the funeral director and staff. The plan utilized Nakamura Mortuary. In addition, Akiona told Plaintiffs that she wished to be interred according to the wishes of her family. Plaintiffs, some of whom had not seen their mother for some time, desired an open casket funeral.

Anthony Vierra, an employee of Nakamura Mortuary, went to the morgue on the morning of September 25, 1995 to retrieve Akiona's remains. When he arrived, no one was staffing the morgue; a security guard let him in. Vierra discovered Akiona's body outside the refrigeration unit. The body was bloated and partially decomposed. The face was bloated and purple, the eyes were bulging, and the tongue was swollen and partially protruding. Akiona's body was also discolored, and the veins appeared black. Alvin Nakamura, the owner of the mortuary, stated in a deposition that the foregoing indicated an "advanced stage of decay." Nakamura also stated that there was "a lot of skin slip, a lot of edema in the tissues, it smelled real bad. It was a hazzard to health." Nakamu-

ra ordered the body immediately embalmed for safety reasons.

Arthur Souza performed the embalming. The embalming did not alter the appearance of Aikona's body but delayed further decomposition and prevented any odor. He spoke with Plaintiffs and informed them that the funeral could not be open casket because of the condition of the body. When the Plaintiffs did not understand what he meant, Souza asked if they would like to see the body. Two of the Plaintiffs, Clarence and Malcolm Akiona, went with him to see the body. Plaintiffs claim that the news of what happened to Akiona's body caused them serious emotional distress.[1] None of the Plaintiffs claim that they suffered physical injury as a result of the incident or that their emotional distress was manifested in a physical injury or illness.

On September 22, 1997, Plaintiffs filed a complaint against Defendants and Clinical Laboratories of Hawaii, Inc. (CLHI),[2] alleging negligence, negligent infliction of emotional distress, intentional infliction of emotional distress, the tort of outrage, abuse of a corpse, and trespass.[3] On January 27, 1998, Plaintiffs filed an amended complaint that alleged the same six counts as the original complaint. Defendant MMH moved for summary judgment on all counts on October 8, 1998. Defendants Freeland, County of Maui, and CLHI joined in MMH's motion. At the hearing on the motion, the circuit court ruled that there was no factual basis to support Plaintiffs' claims, except for those sounding in negligence. Although the court stated that it did not "have any doubt [Plaintiffs] experienced emotional distress[,]" the court agreed with Defendants' argument that HRS § 663–8.9 barred recovery in this case and that existing Hawai'i law did not recognize a separate claim for relief for negligent mishandling of corpse.

On March 9, 1999, the court entered an order stating that "no genuine issues of material fact exist and Defendants ... are entitled to summary judgment as a matter of law as to all claims made by Plaintiffs herein."

A judgment pursuant thereto was entered on April 15, 1999. Plaintiffs timely appealed.

On appeal, Plaintiffs argue that HRS § 663–8.9 does not apply to a claim of NIED for the negligent mishandling of a corpse and, therefore, that the circuit court erred in granting summary judgment in favor of Defendants as to the NIED claim. In the alternative, Plaintiffs argue that this court should adopt the rule articulated in the Restatement (Second) of Torts § 868, establishing the independent tort of interference with dead bodies. We agree that HRS § 663–8.9 does not apply to a claim of NIED arising from the negligent mishandling of a corpse and that, therefore, the circuit court erred in granting summary judgment in favor of the defendants. Because we hold that HRS § 663–8.9 does not apply, we need not address Plaintiffs' argument that interference with dead bodies should be adopted as an independent tort.

## II. DISCUSSION

### A. Standard of review

■ A circuit court's grant of summary judgment is reviewed *de novo* under the same standard applied by the circuit court. *Dairy Road Partners v. Island Ins. Co., Ltd.,* 92 Hawai'i 398, 411, 992 P.2d 93, 106 (2000) (quoting *Bronster v. United Public Workers,* 90 Hawai'i 9, 13, 975 P.2d 766, 770 (1999)) (some citations omitted). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Hawai'i Rules of Civil Procedure (HRCP) Rule 56(c).

■ Whether HRS § 663–8.9 applies to a claim for the negligent infliction of emotional distress arising from the negligent mutilation of a corpse is a question of statutory interpretation. Questions of statutory interpreta-

---

1. Although Clarence and Malcolm Akiona saw Akiona's body, they do not allege a separate claim that the sight of the body caused them serious emotional distress.

2. On May 25, 1999, Plaintiffs stipulated to the dismissal, with prejudice, of all claims against Defendant CLHI.

3. Plaintiffs did not allege a contract claim.

tion are questions of law to be reviewed *de novo* under the right/wrong standard. *Flor v. Holguin,* 94 Hawai'i 70, 77, 9 P.3d 382, 389 (2000) (quoting *State v. Kotis,* 91 Hawai'i 319, 327, 984 P.2d 78, 86 (1999)) (some citations omitted).

Our statutory construction is guided by the following well established principles:

> our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.
>
> When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists....
>
> In construing an ambiguous statute, "[t]he meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning." HRS § 1–15(1) [ (1993) ]. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.

*Gray [v. Administrative Dir. of the Court],* 84 Hawai'i [138,] 148, 931 P.2d [580,] 590 [ (1997) ] (quoting *State v. Toyomura,* 80 Hawai'i 8, 18–19, 904 P.2d 893, 903–04 (1995)) (brackets and ellipsis points in original) (footnote omitted). This court may also consider "[t]he reason and spirit of the law, and the cause which induced the legislature to enact it ... to discover its true meaning." HRS § 1–15(2) (1993)....

*In re Water Use Permit Applications,* 94 Hawai'i 97, 121, 9 P.3d 409, 456 (2000) (quoting *Barnett v. State,* 91 Hawai'i 20, 31, 979 P.2d 1046, 1057 (1999) (quoting *State v. Davia,* 87 Hawai'i 249, 254, 953 P.2d 1347, 1352 (1998))) (some alterations in original).

**B. HRS § 663–8.9 does not apply to an NIED claim arising out of the negligent mishandling of a corpse.**

This court first recognized a claim for the negligent infliction of emotional distress in *Rodrigues v. State,* 52 Haw. 156, 472 P.2d 509 (1970) (emotional distress caused when house flooded). In *Rodrigues,* this court stated that "serious mental distress may be found where a reasonable man, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." *Id.* at 173, 472 P.2d at 520. This court later held that recovery for the NIED of one not physically injured is only allowed where there has been "some physical injury to property or a person." *Chedester v. Stecker,* 64 Haw. 464, 468, 643 P.2d 532, 535 (1982).

However, in 1986, as part of an effort to achieve tort reform and stabilize liability insurance, the legislature adopted HRS § 663–8.9, which limited the availability of the claim for relief of NIED. *See* 1986 Haw. Spec. Sess. L. Act 2, § 1 at 3, § 22 at 12. The statute abolished the claim where the underlying basis for the action was property damage. However, the claim survived where the claimant's emotional distress resulted in physical injury or mental illness. *See* HRS § 663–8.9; Hse. Stand. Comm. Rep. No. 4–86, in 1986 House Journal, Special Session, at 44. HRS § 663–8.9 provides:

> **Serious emotional distress arising from property damage; cause of action abolished; exception for physical injury.** (a) No party shall be liable for the negligent infliction of serious emotional distress or disturbance if the distress or disturbance arises solely out of damage to property or material objects.
>
> (b) This section shall not apply if the serious emotional distress or disturbance results in physical injury to or mental illness of the person who experiences the emotional distress or disturbance.

HRS Chapter 663 (1993 & Supp.2000) does not include definitions of "property" or "material objects." Plaintiffs argue that HRS § 663–8.9 does not apply because: 1) a corpse is not "property"; and 2) case law and the legislative history of HRS § 663–8.9 establish that NIED for the negligent mishandling of a corpse exists as an independent tort.

### 1. Whether a corpse is property

Plaintiffs argue that a corpse is not "property" within the meaning of HRS § 663–8.9 because it cannot be sold or transferred and has no utility except to be interred or cremated. Although this court has noted that " '[i]t is axiomatic that a corpse is not a person[,]' " *Menashe v. Sutton*, 38 Haw. 449, 461 (1950) (quoting *Brooks v. Boston & Northern St. Ry.*, 211 Mass. 277, 97 N.E. 760 (1912)), we have not addressed the issue whether a corpse is considered "property."

> It is universally recognized that there is no property in a dead body in a commercial or material sense. "[I]t is not part of the assets of the estate (though its disposition may be affected by the provision of the will); it is not subject to replevin; it is not property in a sense that will support discovery proceedings; it may not be held as security for funeral costs; it cannot be withheld by an express company, or returned to the sender, where shipped under a contract calling for cash on delivery; it may not be the subject of a gift causa mortis; it is not common law larceny to steal a corpse. Rights in a dead body exist ordinarily only for purposes of burial and, except with statutory authorization, for no other purpose." *Snyder v. Holy Cross Hosp.*, 30 Md.App. 317 at 328 n. 12, 352 A.2d 334 at 340, quoting P.E. Jackson, The Law of Cadavers and of Burial and Burial Places (2d ed.1950).

*State v. Powell*, 497 So.2d 1188, 1192 (Fla. 1986) (quoting *Dougherty v. Mercantile Safe Deposit & Trust Co.*, 282 Md. 617, 387 A.2d 244, 246 n. 2 (1978)), *cert. denied*, 481 U.S. 1059, 107 S.Ct. 2202 (1987).[1] We agree with the reasoning of the *Powell* court and hold that a corpse is not "property" for purposes of HRS § 663–8.9.

4. Many courts have instead recognized that the nearest relatives of the deceased have a quasi-property right in the deceased's body that arises from their duty to bury the deceased. *See, e.g., Travelers Ins. Co. v. Smith*, 338 Ark. 81, 991 S.W.2d 591, 595 (1999); *Bauer v. North Fulton Med. Ctr., Inc.*, 241 Ga.App. 568, 527 S.E.2d 240, 243 (1999); *Massey v. Duke Univ.*, 130 N.C.App. 461, 503 S.E.2d 155, 158 (1998); *Coleman v. Sopher*, 201 W.Va. 588, 499 S.E.2d 592, 604 (1997); *In re Estate of Medlen*, 286 Ill.App.3d 860, 222 Ill.Dec. 220, 677 N.E.2d 33, 36 (1997).

### 2. Whether a corpse is a "material object"

HRS § 663–8.9(a) also applies to NIED claims arising solely out of damage to "material objects." As noted, *supra*, there is no definition of the term "material objects" in HRS Chapter 663, nor is this term used in any other chapter. Ordinarily we would presume that, because the legislature used both the term "property" and the term "material objects," the two terms are not synonymous. *See, e.g., In re Doe*, 90 Hawai'i 246, 250, 978 P.2d 684, 688 (1999) (stating that courts "are bound to give effect to all parts of a statute, and that no clause, sentence, or word shall be construed as superfluous, void, or insignificant if a construction can be legitimately found which will give force to and preserve all words of the statute").

However, the statute's legislative history refers only to NIED claims arising from damage to "property." *See* Sen. Stand. Comm. Rep. No. S5–86, in 1986 Senate Journal, Special Session, at 29 ("[t]his section abolishes any cause of action for negligent infliction of serious emotional distress where the underlying basis for such a claim arises solely from *property damages*" (emphasis added)); Hse. Stand. Comm. Rep. No. 4–86, in 1986 House Journal, Special Session, at 44 ("[t]his section is intended to abolish the cause of action for negligent infliction of serious emotional distress where the underlying basis for an emotional distress claim emanates from *property damage* only" (emphasis added)).

Neither the statute nor its legislative history shed light upon the meaning of the term "material objects." However, as this court recently noted, "HRS § 663–8.9 reflects the view expressed by Justice [Bernard] Levinson, concurring and dissenting in *Rodrigues*[.]"[5] *Roes v. FHP, Inc.*, 91 Hawai'i 470,

*But see Carney v. Knollwood Cemetery Ass'n*, 33 Ohio App.3d 31, 514 N.E.2d 430, 435 (1986) ("A trend away from the quasi-property fiction is discernible in the case law."); *Strachan v. John F. Kennedy Mem'l Hosp.*, 109 N.J. 523, 538 A.2d 346, 350 (1988) (noting "the somewhat dubious nature of a property right to the body" (internal quotation marks omitted)).

5. Justice Abe joined in Justice Levinson's concurring and dissenting opinion. *Rodrigues*, 52 Haw. at 174, 472 P.2d at 523.

474, 985 P.2d 661, 665 n. 6 (1999). Justice Levinson used the term "material objects," equating it with "property." *Rodrigues*, 52 Haw. at 178, 472 P.2d at 522 ("the reality of mental suffering because of the loss of or injury to *property* is offset by my disagreement with the policy of recognizing emotional ties to *material objects* and by the vast potential for abuse inherent in such a theory of recovery" (emphases added)). Justice Levinson echoed the concern of Dean William Lloyd Prosser that allowing recovery for emotional distress due to damage to property would engender " 'vexatious suits and fictitious claims.' " *Id.* at 178, 472 P.2d at 523 (quoting Prosser, Torts § 55 at 347 (3d ed.1964)). Justice Levinson went on to state:

> It further appears to me that when a person's *material possessions* are threatened by the negligence of another, it cannot be said that the owner is within a foreseeable zone of 'psychic' risk. Even though a person's injury may be very real and can be proven, I would question the policy behind recognizing the value of an attachment to *material possessions*. This attachment should neither be encouraged by society nor made a basis for recovery in a court of law in an age when man has surrounded himself with a veritable plethora of *material possessions* approaching the limits of what even an affluent society needs or can afford.

*Id.* at 179, 472 P.2d at 523 (emphases added). Justice Levinson's concerns dealt solely with claims for emotional distress arising from damage to "property." The remains of a loved one cannot be considered within the universe of "material possessions" to which Justice Levinson believed society should not encourage attachment. Because Justice Levinson's view appears to be embodied in HRS § 663–8.9, and the legislative history refers to emotional distress claims arising from property damage, we believe that the legislature was concerned solely with NIED claims associated with damage to what is traditionally considered "property." There is no indication in the legislative history that the legislature contemplated the exclusion of claims for emotional distress arising from the negligent mishandling of a corpse.

Further, the policy behind the NIED claim and HRS § 663–8.9 support the foregoing interpretation of the statute. *Cf. State v. Eleneki*, 92 Hawai'i 562, 565–66, 993 P.2d 1191, 1194–95 (2000) (examining the policies behind the statutes where neither the plain language nor the legislative history provide guidance as to the issue in question). Some of the primary concerns that prompt courts to limit recovery for emotional distress in general are: 1) emotional distress is temporary and often trivial; 2) the distress may be imagined and is easily feigned; and 3) it may seem unfair to hold defendants, whose actions were merely negligent, financially responsible for harm that appears remote from the actual conduct. *See* W. Page Keeton et. al., Prosser and Keeton on the Law of Torts § 54, at 360–61 (5th ed.1984); *see also Rodrigues*, 52 Haw. at 178, 472 P.2d at 522 (Levinson, J., concurring and dissenting) (stating that "[t]he majority fail[ed] to adopt a sufficiently stringent test to measure the 'genuineness' and 'seriousness' of mental distress in cases arising out of property damage").

However, commentators have noted that:

> In two special groups of cases, however, there has been some movement to break away from the settled rule and allow recovery for mental disturbance alone. A number of courts have allowed recovery against a telegraph company for the negligent transmission of a message, especially one announcing death, which indicates upon its face that there is an especial likelihood that such mental distress will result. The other group of cases has involved the *negligent mishandling of corpses*. Here the traditional rule has denied recovery for mere negligence, without circumstances of aggravation. There are by now, however, a series of cases allowing recovery for negligent embalming, negligent shipment, running over the body, and the like without such circumstances of aggravation. What all these cases appear to have in common is an *especial likelihood of genuine and serious mental distress, arising from special circumstances, which serves as a guarantee that the claim is not spurious.* ... Where the guarantee can be found, and the mental distress is undoubtedly real and serious, there may be no good reason to deny recovery.

Keeton, *supra*, § 54, at 362 (emphases added) (footnotes omitted). Thus, the perceived unfairness of holding defendants financially responsible for emotional distress caused by their negligent conduct is ameliorated in cases involving mishandling of a corpse. Due in part to the vulnerability of grieving loved ones, *see infra*, and the importance of the opportunity for them to pay their final respects, *see, e.g., Quesada v. Oak Hill Improvement Co.*, 213 Cal.App.3d 596, 261 Cal. Rptr. 769, 774 (1989) ("Parties charged with the care, custody and control of the remains of a deceased know or reasonably should know that the surviving friends and relatives are emotionally vulnerable."), their suffering does not seem too remote from defendant's negligence in mishandling the body. Although emotional distress damages are difficult to quantify monetarily, this difficulty should not preclude plaintiffs from undertaking to establish them. *Cf. Lauer v. Young Men's Christian Ass'n of Honolulu*, 57 Haw. 390, 557 P.2d 1334 (1976) (discussing the difficulty of proving damages for an alleged fourth amendment violation). Further, defendants in cases involving the mishandling of a corpse are in a better position than the plaintiffs both to try to prevent such occurrences and to pay for the consequences when they do occur. Therefore, it is not unfair to hold defendants financially responsible for their negligent mishandling of corpses.

We also note that several jurisdictions, although representing the minority view,[6] have recognized these and similar principles and allow plaintiffs who have not suffered physical injury to recover damages for emotional distress arising from the negligent mishandling of corpses. *See, e.g., Contreraz v. Michelotti–Sawyers*, 271 Mont. 300, 896 P.2d 1118, 1121 (1995) (although not creating a new claim for relief, holding that "one who negligently removes, withholds, mutilates, embalms, provides funeral, burial, or crematory services, or operates upon the body of a dead person or prevents its proper interment or cremation is subject to liability"); *Brown v. Matthews Mortuary, Inc.*, 118 Idaho 830, 801 P.2d 37 (1990) (mishandling of a corpse constitutes an exception to the general rule that plaintiffs must show physical injury in order to recover damages for emotional distress); *Strachan*, 538 A.2d at 353 (plaintiffs need not establish physical injury based on either "the long-recognized exception for negligent mishandling of a corpse or the especial likelihood that this claim is genuine" (citation omitted)); *Morton v. Maricopa County*, 177 Ariz. 147, 865 P.2d 808, 812 (Ariz.App.1993) (claim for relief for mental distress and suffering arising from interference with decedent's body does not require a showing of physical injury). These principles have also been recognized in cases involving the post-interment mishandling of human remains. *See, e.g., Whitehair v. Highland Memory Gardens, Inc.*, 174 W.Va. 458, 327 S.E.2d 438, 443 (1985) (holding that "[a] cause of action for negligent or intentional mishandling of a dead body does not require a showing of physical injury or pecuniary loss"); *Carney v. Knollwood Cemetery Ass'n*, 33 Ohio App.3d 31, 514 N.E.2d 430, 435 & n.

6. For examples of the majority view, *see, e.g., Rekosh v. Parks*, 316 Ill.App.3d 58, 249 Ill.Dec. 161, 735 N.E.2d 765, 771 (2000) (declining to recognize mishandling of a corpse as an exception to the "impact rule" and the "zone of physical danger rule"); *Hall v. Carney*, 236 Ga.App. 172, 511 S.E.2d 271, 274 (1999) (physical injury required); *Reid v. Pierce County*, 136 Wash.2d 195, 961 P.2d 333, 338 (1998) (en banc) (plaintiffs must be present at the scene where the tortious conduct occurred); *Jaynes v. Strong–Thorne Mortuary, Inc.*, 124 N.M. 613, 954 P.2d 45, 50 (N.M.1997) (no liability for NIED except for bystander liability, which requires a "contemporary sensory perception" of the harm); *Gonzalez v. Metropolitan Dade County Public Health Trust*, 651 So.2d 673 (Fla.1995) (plaintiffs must show that they suffered physical injury or that defendants' conduct was willful or wanton); *Washington v. John T. Rhines Co.*, 646 A.2d 345 (D.C.1994) (plaintiffs must have been in the "zone of danger"); *Kearney v. City of Philadelphia*, 150 Pa.Cmwlth. 517, 616 A.2d 72, 74 (1992) (noting that Pennsylvania has only adopted Restatement of Torts § 868 (1939), which allows recovery for intentional or wanton mistreatment of a corpse), *appeal denied*, 534 Pa. 643, 626 A.2d 1160 (1993); *Jobin v. McQuillen*, 158 Vt. 322, 609 A.2d 990, 993 (1992) (plaintiffs must have suffered physical injury or been in the "zone of danger"); *Kimelman v. City of Colorado Springs*, 775 P.2d 51 (Colo.App.1988) ("zone of danger"), *cert. denied*, 493 U.S. 981, 110 S.Ct. 512, 107 L.Ed.2d 514 (1989); *Galvin v. McGilley Mem'l Chapels*, 746 S.W.2d 588 (Mo.App.1987) (physical injury or intentional or malicious conduct); *Burgess v. Perdue*, 239 Kan. 473, 721 P.2d 239 (1986) (same). *But see Brady v. Criswell Funeral Home, Inc.*, 916 P.2d 269 (Okla.1996) ("some physical suffering" required).

9 (1986) (recognizing the claim for relief for the mishandling of a dead body as a subclass of the tort of infliction of serious emotional distress and is one of the special circumstances under which recovery is allowed in the absence of physical injury).

■ In the present case, Plaintiffs argue that, if claims such as theirs are barred, there will often be no one to hold defendants accountable for their negligent handling of dead bodies. A defendant does not owe a duty of care to the decedent, who is not himself actually harmed by the defendant's actions. The court in *Quesada* stated:

> As a society we want those who are entrusted with the bodies of our dead to exercise the greatest of care. Imposing liability within the limits described will promote that goal. Further, those who come in contact with the bereaved should show the greatest solicitude; it is beyond a simple business relationship-they have assumed a position of special trust toward the family. Few among us who have felt the sting of death cannot appreciate the grief of those bereaved by the loss. It is neither unreasonable nor unfair to expect the same appreciation by those who prepare our dead.

261 Cal.Rptr. at 778 (citation omitted). We agree that those who are entrusted with the care and preparation for burial of a decedent's body have a duty to exercise reasonable care. Further, we believe that the minority view, that does not require the plaintiff's emotional distress to manifest itself in a physical injury, is the better reasoned approach.

■ Based on the foregoing, we believe that the policies behind the NIED cause of action and HRS § 663–8.9 support allowing a claim for NIED arising from the negligent mishandling of a corpse.[7] Because a corpse is neither "property" nor a "material object" for purposes of HRS § 663–8.9, we hold that the statute does not apply to NIED claims arising from the negligent mishandling of a corpse.[8]

### 3. Standing

The class of plaintiffs who may assert a claim for relief for the emotional distress suffered as a result of the negligent mishandling of a corpse is not unlimited. Many of the courts that have allowed recovery to those who have not been physically injured have limited standing to those entitled to dictate the disposition of the decedent's remains. *See, e.g., Brown,* 801 P.2d at 44 (only the surviving spouse or next surviving kin is entitled to the exception); *Morton,* 865 P.2d at 812 ("nearest of kin");[9] *Whitehair,* 327

---

7. The concurring and dissenting opinion argues that this court should base its holding upon the *Rodrigues* reasonableness standard. Having decided the paramount issue that a person's interest in freedom from serious emotional distress was entitled to legal protection, this court stated that "serious mental distress may be found where a reasonable man, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." *Rodrigues,* 52 Haw. at 173, 472 P.2d at 520. This court remanded the case to the trial court to apply the foregoing rule to the award of damages for mental distress. *Id.* at 174, 472 P.2d at 521. *Rodrigues* does not stand for the proposition that whether a plaintiff's mental distress satisfies the reasonable person standard is a threshold question that determines whether he or she has alleged an actionable claim.

8. We note that our holding is consistent with *Francis v. Lee Enters., Inc.,* 89 Hawai'i 234, 971 P.2d 707 (1999). In *Francis,* we held that damages for emotional distress arising from a breach of contract are only recoverable where they are specifically provided for in the contract or where nature of the contract is such that emotional distress damages are within the contemplation or expectation of the parties. *Id.* at 240, 971 P.2d at 713. Specifically, we noted that courts may still award emotional distress damages in two types of situations: 1) where the emotional distress is accompanied by a bodily injury; and 2) where, because of the nature of the contract, serious emotional distress is "a particularly foreseeable result of a breach[.]" *Id.* As an example of the second type of situation, we cited *Wilson v. Houston Funeral Home,* 42 Cal.App.4th 1124, 50 Cal.Rptr.2d 169, 173 (1996), which involved a mortician's contract to prepare a body for burial. Thus, *Francis* impliedly recognizes a claim for emotional distress in a breach of contract action where the contract involves the provision of funeral or burial services. However, *Francis* is not controlling in the present case because Plaintiffs have not alleged a breach of contract claim. *See supra* note 3.

9. Those who are not the decedent's "nearest of kin" may only recover under a traditional negligent infliction of emotional distress claim, which requires that the emotional distress be manifested in physical injury. *Morton,* 865 P.2d at 812.

S.E.2d at 443 (surviving spouse and, in the absence thereof, the next of kin according to the laws of intestate succession). However, the California Supreme Court has adopted a broader rule. In *Christensen v. Superior Court*, 54 Cal.3d 868, 2 Cal.Rptr.2d 79, 820 P.2d 181, 183 (1991), the court held that the class of potential plaintiffs who may bring such a claim is "close family members who were aware that funeral and/or crematory services were being performed, and on whose behalf or for whose benefit the services were rendered." *See also Contreraz*, 896 P.2d at 1123 (adopting *Christensen* standing rule).

■ We believe that limiting recovery to immediate family members who are aware that the funeral, burial, or crematory services are being performed and for whose benefit the services are being performed is a reasonable limitation on the class of potential plaintiffs and that to extend the class further could encourage "vexatious suits and fictitious claims." Therefore, we hold that the duty to use reasonable care in the preparation of a body for funeral, burial, or crematory services, or in the rendition of those services, runs to the decedent's immediate family members who are aware of the services and for whose benefit the services are being performed.[10] We define "immediate family members" as the decedent's surviving spouse, reciprocal beneficiary, children, parents, siblings, or any other person who in fact occupies an equivalent status. *Cf.* HRS § 663-3(b) (Supp.2000) (stating that a wrongful death action may be brought "by the surviving spouse, reciprocal beneficiary, children, father, mother, and by any person

wholly or partly dependent upon the deceased person").

■ Having reviewed the record in the light most favorable to Plaintiffs, it is apparent that they are within the class of persons that have standing to bring a cause of action for NIED resulting from Defendants' allegedly negligent mishandling of Akiona's body and that there are genuine issues of material fact regarding their cause of action. Therefore, we hold that the circuit court erred in granting summary judgment in favor of Defendants on Count I.

## C. It is unnecessary to address the adoption of interference with dead bodies as an independent tort.

Plaintiffs argue that, if HRS § 663-8.9 bars recovery in the instant case, this court should adopt the rule stated in Restatement (Second) Torts § 868 [11] because: 1) the negligent mishandling of a corpse involves a special likelihood of genuine and serious emotional distress; 2) the harm is foreseeable; 3) the fact that it is difficult to calculate the damages should not prevent this court from adopting the rule; and 4) rejecting the rule would insulate the negligent acts of those entrusted with the care of the remains of loved ones. Because we hold that HRS § 663-8.9 does not apply to NIED claims arising from the negligent mishandling of a corpse, we need not address whether interference with dead bodies should be adopted as an independent tort.

10. The concurring and dissenting opinion argues that the requirement that the plaintiff be aware of the funeral, burial, or crematory services is "irrelevant" and that the requirement that the services be rendered on the plaintiff's behalf is "contractual in nature and remote from the interest sought to be protected." Dissent at 160, 28 P.3d at 995. However, if the plaintiffs were not aware that the funeral, burial, or crematory services were being performed and/or did not intend to attend the ceremony, they cannot be foreseeably harmed by any negligent conduct occurring in the course of the preparations or the ceremony. For example, Plaintiffs in the present case argue that they were harmed because the mutilation of their mother's body prevented them from paying their final respects in the way that they had hoped. In contrast, the expectations of

a family member who did not know about the funeral have not been harmed. Finally, we clarify that the requirement that the services be rendered on the plaintiffs' behalf does not implicate or require a contractual relationship.

11. Restatement (Second) Torts § 868, entitled "Interference with Dead Bodies," provides that "[o]ne who intentionally, recklessly or negligently removes, withholds, mutilates or operates upon the body of a dead person or prevents its proper interment or cremation is subject to liability to a member of the family of the deceased who is entitled to the disposition of the body." However, section 868 was subsequently amended so that it no longer limits recovery to family members. Restatement (Second) Torts (Appendix) § 868, reporter's note.

## III. CONCLUSION

Based on the foregoing, we vacate the circuit court's order granting summary judgment in favor of the Defendants as to Count I and the judgment entered pursuant thereto. We remand the case to the circuit court for further proceedings.

Opinion of ACOBA, J., Concurring in part and Dissenting in part

I agree that summary judgment must be vacated. However, I disagree with the reasoning employed by the majority and the basis of the rule it adopts as to who may recover under the circumstances set forth in this case. In my view, (1) *in the context of this case*, the human remains of the decedent are not "property" as that term is used in Hawai'i Revised Statutes (HRS) § 663–8.9(a) (1993), (2) negligent infliction of mental distress is an independent tort for which recovery is allowed in this case under the standards established in *Rodrigues v. State*, 52 Haw. 156, 472 P.2d 509 (1970), (3) *Rodrigues* is precedent and controls the disposition in this case rather than the "minority" rule, and (4) recovery for mental distress resulting from the negligent mishandling of human remains should be allowed for the parents, siblings, spouse, and children of the decedent or, in the absence of any such persons, those who in fact occupy an equivalent status, as dictated under the principles in *Rodrigues*.

### I.

#### A.

Law is, if anything, contextual. What in law may be acceptable in one setting may be considered anathema in another. HRS § 663–8.9(a), which abolishes a cause of action for "negligent infliction of serious emotional distress if the distress arises solely out of damage to *property or material objects*" (emphasis added), presents such a dilemma.[1]

"Property" is, in a broad sense, "an aggregate of rights which are guaranteed and protected by the government." *Black's Law Dictionary* 1216 (6th ed.1990) (citing *Fulton Light, Heat & Power Co. v. State*, 65 Misc. 263, 121 N.Y.S. 536 (N.Y.Ct.Cl.1909)). Among these rights are "the unrestricted and exclusive right to a thing; the right to dispose of a thing in every legal way, to possess it, to use, it, and to exclude every one else from interfering with it." *Id.* The term also denotes "everything that has an exchangeable value or which goes to make up wealth or estate[:] ... extends to every species of valuable right and interest, and includes real and personal property, easements, franchises and incorporeal hereditaments, and ... every invasion of one's property rights by actionable wrong." *Id.* (citing *Labberton v. General Cas. Co. of Am.*, 53 Wash.2d 180, 332 P.2d 250, 252, 254 (1958)).

The term "material object" is not a legal concept but stems from the concurring and dissenting opinion in *Rodrigues*, which discouraged recognition of "attachment to material possessions" as a basis for recovery in a court of law. 52 Haw. at 175 n. 8, 472 P.2d at 521 n. 8. In that sense, the term embodies a value determination that "materialistic" attachment, *i.e.*, a "preoccupation with or stress upon material ... things," *Merriam Webster's Collegiate Dictionary* 717 (10th ed.1993), is not actionable. Thus under that view, while all "material objects" are property, not all property would fall within the category of "material object[s]."

The facts in this case do not present a preoccupation with material rather than intellectual or spiritual things and so we are not concerned with the "material object" aspect of HRS § 663–8.9(a). But conceivably, the remains of a person may be regarded as *property*, for example, as where they are purchased for anatomical study, or parts used for organ transplantation, or tissues

---

1. HRS § 663–8.9(b) states that "[t]his section shall not apply if the serious emotional distress or disturbance results in physical injury to or mental illness of the person who experiences the emotional distress or disturbance." Ironically, if read literally, HRS § 663–8.9(b) imposes no limits on liability "if the serious emotional distress ... results in physical injury ... or mental illness [to] the person[.]" Therefore, as long as such

injury or illness can be established, a cause of action with an underlying property claim will not be precluded by the literal language of the statute. "Serious mental distress" is not defined in the statute. Insofar as section (b) incorporates the serious mental distress standard announced in *Rodrigues*, *supra*, it is inherently inconsistent with that case's rejection of physical injury or mental illness as a prerequisite to suit.

recovered for genetic research, or in any other number of transactions or endeavors.

### B.

It is not unexpected, then, that "[s]ome courts have recognized a quasi-property right in dead bodies for the limited purpose of [having a] body ... [appropriately] interred or disposed of." *Culpepper v. Pearl St. Bldg., Inc.,* 877 P.2d 877, 880 (Colo.1994) (citing 22A Am.Jur.2d *Dead Bodies* § 3 (1988); *Whitehair v. Highland Memory Gardens, Inc.,* 174 W.Va. 458, 327 S.E.2d 438, 441 (1985)) (parenthetical explanation omitted). It is said that "[t]he quasi-property rights of the survivors include the right to custody of the body; [the right] to receive it in the condition in which it was left ...; [the right] to have the body treated with decent respect ...; and [the right] to bury or ... dispose of the body without interference." *Whitehair,* 327 S.E.2d at 441 (citations omitted) (cited in *Culpepper,* 877 P.2d at 880). Insofar, however, as the purported property right in human remains serves "as a mere peg upon which to hang damages for ... mental distress," *Restatement (Second) of Torts* § 868 comment a (1979), it is a legal fiction, a proxy for the physical injury, that some courts require as a guarantee of the genuineness of an emotional distress claim. *See Rodrigues,* 52 Haw. at 170–71, 472 P.2d at 519 (citations omitted).

I believe that, in the context in which this case arises, the human remains over which Plaintiffs grieve are not "property" as that term is employed in HRS § 663–8.9. In the context of Plaintiffs' cause of action, the decedent's body is not the object of sale or transfer or of some use, *see Restatement (Second) of Torts* § 868 comment a, *supra,* stemming from its intrinsic nature and, thus, is not property in the commonly understood sense. The mental distress of family members or those in equivalent positions stems from the symbolic character the remains hold for such persons. In that framework, the cause of action is "exclusively one for mental distress," *id.,* and does not "arise solely out of damage to property[.]" HRS § 663–8.9(a). That being the case, HRS § 663–8.9(a) is not applicable, and the case law in our jurisdiction controls.

### II.

The fallacy of an approach that focuses on the object that purportedly gives rise to psychic injury, rather than on an objective measure of the injury itself, is evident in this case. In a claim for psychic injury, it is not the property or the material object that tort recovery and liability are truly concerned with, but with the reaction to the thing. Therefore, it is the reasonableness of a plaintiff's response, rather than the object involved, that should define the ambit of a plaintiff's recovery and delimit the extent to which a defendant must render compensation. That was the focus in *Rodrigues,* in which this court held that "serious mental distress may be found where a reasonable [person], normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." 52 Haw. at 173, 472 P.2d at 520. In applying that standard, claims were to be considered by the jury and the court in the light of the circumstances presented in each case. *See id.* But after *Rodrigues,* this court ruled that "recovery for negligent infliction of emotional distress [ (NIED) ] by one not physically injured" generally requires "some physical injury to property or a person" resulting from the defendant's conduct. *Chedester v. Stecker,* 64 Haw. 464, 468, 643 P.2d 532, 535, *reconsideration denied,* 64 Haw. 464, 643 P.2d 532 (1982) (cited in *Ross v. Stouffer Hotel Co. Ltd.,* 76 Hawai'i 454, 465–66, 879 P.2d 1037, 1048–49 (1994)). *See also Jenkins v. Liberty Newspapers Ltd.,* 89 Hawai'i 254, 269, 971 P.2d 1089, 1104 (1999); *Tseu ex rel. Hobbs v. Jeyte,* 88 Hawai'i 85, 92–93, 962 P.2d 344, 351–52, *reconsideration denied,* 91 Hawai'i 124, 980 P.2d 998 (1998); *Tabieros v. Clark Equip. Co.,* 85 Hawai'i 336, 361, 944 P.2d 1279, 1304 (1997). In mandating that physical injury to a plaintiff result from a defendant's conduct, the law in this jurisdiction regressed to mandating the physical injury or impact requirement previously eschewed in *Rodrigues. See* 52 Haw. at 171, 472 P.2d at 519. Thus, in the absence of "physical injury," plaintiffs who, as in this case, suffered no physical injury cannot generally sue for recovery.[2] And because HRS

---

2. Arguably in some cases emotional distress may manifest itself in some physiological change.

§ 663–8.9 abolished recovery for emotional distress arising from damage to "property," the "physical injury to property" ground for suit is likewise unavailable.

However, in *John & Jane Roes v. FHP, Inc.*, 91 Hawai'i 470, 985 P.2d 661 (1999), where there was no physical injury to either property or a person, the physical injury rule was " 'criticized as [an] inadequate method[ ] of distinguishing between worthy and unworthy claims.' " *Id.* at 473, 985 P.2d at 664 (quoting *Larsen v. Pacesetter Sys., Inc.*, 74 Haw. 1, 40, 837 P.2d 1273, 1293 (1992)). In *FHP*, employees of an airline were exposed to human immunodeficiency virus (HIV) contaminated blood. *See id.* at 472, 985 P.2d at 663. The employees subsequently tested negative for HIV. *See id.* Distinguishing between two seemingly conflicting lines of cases in this jurisdiction with respect to physical injury or impact requirements,[3] this court held that "a claim . . . may be granted . . . where the negligent behavior of a defendant subjects an individual to an actual, direct, imminent, and potentially life-endangering threat to his or her physical safety by virtue of exposure to HIV." *Id.* at 475, 985 P.2d at 666. Relying on *Rodrigues*, it was said that "a reasonable person would foreseeably be unable to cope with the mental stress engendered by an actual, direct, imminent, and potentially life-endangering threat to his or her physical safety." *Id.* (citation omitted). However, rather than applying the general standard rationale upon which *Rodrigues* rested, *FHP* recognized the HIV related claim as an exception to the general rule that recovery was permitted only when there was some predicate injury to a person.

III.

In this case, the majority again carves out an exception to the general rule, adopting the "minority" view that physical injury or illness is not a prerequisite to suit in a claim for negligent mishandling of a body.[4] The majority thus employs a categorical approach in determining whether a person is eligible to bring a claim of mental distress. That very course, however, was rejected in *Rodrigues* on the premise that there is a *general duty* to refrain from negligent infliction of serious mental distress:

> It can no longer be said that the advantages gained by the courts in administering claims of mental distress by reference to narrow categories outweigh the burden thereby imposed on the plaintiff. We recognize that the interest in freedom from negligent infliction of serious mental distress is entitled to independent legal protection. We hold, therefore, that there is a duty to refrain from the negligent infliction of serious mental distress.

52 Haw. at 174, 472 P.2d at 520. The categorical approach lacks a cohesive rationale and can produce unjust results. *See id.* at 174, 472 P.2d at 520–21 (citations omitted). Thus, the better view would be to treat exceptions to the general rule as examples of trustworthy claims because they involve circumstances that guarantee the "genuineness and seriousness" of the claim. *Id.* at 171, 472 P.2d at 519.

Ostensibly the categorical approach is employed to avoid the dangers of "vexatious suits and fictitious claims," majority opinion at 152, 28 P.3d at 987 and a jury without restraint that might otherwise result from the application of a general standard. But

---

**3.** *FHP* distinguishes two lines of cases with respect to physical injury or impact requirements. In *Leong v. Takasaki*, 55 Haw. 398, 520 P.2d 758 (1974), this court held that "when it is reasonably foreseeable that a reasonable plaintiff-witness to an accident would not be able to cope with the mental stress engendered by such circumstances, the trial court should conclude that defendant's conduct is the [legal] . . cause of plaintiff's injury and impose liability on the defendant for any damages arising from the consequences of his [or her] negligent act." *Id.* at 410, 520 P.2d at 765. On the other hand, this court has subscribed to the principle that "recovery for negligent infliction of emotional distress by one not physically injured is generally permitted only when there is 'some physical injury to property or a[nother] person' resulting from the defendant's conduct." *Ross*, 76 Hawai'i at 465–66, 879 P.2d at 1048–49 (quoting *Chedester*, 64 Haw. at 468, 643 P.2d at 535) (footnote omitted).

**4.** That view essentially reflects the approach in *Restatement (Second) of Torts* § 868, *supra*, that discards the requirement of physical injury for family members seeking recovery against "[o]ne who . . . negligently . . . mutilates . . . [a] body of a dead person[.]"

the jury is no less "without restraint" under the "reasonable [person]" standard ... than in innumerable other negligence cases where a "reasonable [person]" standard and general tort principles are applied and where the preliminary issue of whether the case presents questions on which reasonable [persons] would disagree is for the court.

*Rodrigues*, 52 Haw. at 175 n. 8, 472 P.2d at 521 n. 8. Moreover, as *Campbell v. Animal Quarantine Station*, 63 Haw. 557, 632 P.2d 1066 (1981) pointed out eleven years following this court's holding in *Rodrigues*, "there has been no plethora of similar cases." *Id.* at 565, 632 P.2d at 1071 (internal quotation marks omitted). "The fears of unlimited liability have not proved true." *Id.*

It was determined more than three decades ago that the advantages gained by the courts in administering claims of mental distress by reference to narrow categories was outweighed by the burden thereby imposed on the plaintiff and that the "interest in freedom from negligent infliction of serious mental distress is entitled to independent legal protection." *Rodrigues*, 52 Haw. at 173–74, 472 P.2d at 520. Hence, psychic tort law in this jurisdiction progressed beyond the categorical approach in deciding the viability of a mental distress claim.

### IV.

In my view, the physical injury requirement and the categorical approach to claims of psychic tort sounding in negligence were renounced in *Rodrigues*. "[T]he preferable approach is to adopt [a] general standard[ ] to test the genuineness and seriousness of mental distress in any particular case." *Id.* at 171, 472 P.2d at 519. Consequently, there is little to be gained from relying on the minority view in deciding this appeal. Indeed, "Hawai'i 'became the first jurisdiction to allow recovery for NIED without a showing of physically manifested harm' to the plaintiff." *FHP*, 91 Hawai'i at 473, 985 P.2d at 664 (quoting *Campbell*, 63 Haw. at 560, 632 P.2d at 1068) (brackets omitted). As *FHP* suggests, where no physical injury exists, resort is to the *Rodrigues* standard.

Hence, the appropriate measure for determining whether plaintiffs have alleged an actionable claim in this jurisdiction is that set forth in *Rodrigues*—that is, whether a reasonable person, normally constituted, would suffer severe mental distress under the circumstances of the case. *See* 52 Haw. at 170, 472 P.2d at 519 (stating that "in determining the duty imposed on the defendant, if any, we must weigh the considerations of policy which favor the plaintiff's recovery against those which favor limiting the defendant's liability"). "[W]hether the case presents questions [of liability] on which reasonable [persons] would disagree is for the court." *Id.* at 175 n. 8, 472 P.2d at 521 n. 8. "After due regard to the standard we have adopted ..., the question of whether the defendant is liable to the plaintiff in any particular case will be solved most justly by the application of general tort principles." *Id.* at 174, 472 P.2d at 520 (citations omitted).

Applying that standard returns reason and symmetry to the law and easily resolves the issue presented to us in this case. For there is near universal agreement that a reasonable person, normally constituted, may be unable to adequately cope with the mental stress engendered by the desecration of a deceased family member's remains. Recognition of negligently inflicted psychic injury as an independent tort, like the life experiences that compel it, *see FHP*, 91 Hawai'i at 476–77, 985 P.2d at 667–68, cannot be confined in a doctrinal straitjacket.

### V.

*Rodrigues*, rather than *Christensen v. Superior Court*, 54 Cal.3d 868, 2 Cal.Rptr.2d 79, 820 P.2d 181 (1991), is precedent in our jurisdiction and controls on the question of who is entitled to claim mental distress resulting from the mishandling of human remains. *Rodrigues* instructs that a "limitation on the right of recovery, as in all negligence cases, is that the defendant's obligation to refrain from particular conduct is owed only to those [plaintiffs] who are foreseeably endangered by the conduct and only with respect to those risks or hazards whose likelihood made the conduct unreasonably dangerous." 52 Haw. at 174, 472 P.2d at 521 (citations omitted). Under *Rodrigues*, then, the nature of the risk defines the scope of liability. As a result, in devising a rule as to who should recover in this case, there is justification for

affording the right to sue to those most likely to suffer mental distress because of the desecration of a body, for they are those "foreseeably [affected] by the [wrongful] conduct." *Id.*

Those most likely affected are those who are also most likely to suffer the greatest grief over the death of the decedent—the parents, siblings, spouse, and children of the deceased and, in the absence of any such persons, those who in fact occupy an equivalent status. *Cf.* HRS § 663–3(b) (Supp.2000) (stating that damages may be recovered for a wrongful death of a person "by the surviving spouse, reciprocal beneficiary, children, father, mother, and by any person wholly or partly dependent upon the deceased person").[5] The majority has adopted the foregoing formulation of "family members" and incorporated it as part of the majority opinion.[6] However, the foregoing formulation rests on the precepts in *Rodrigues.*

The *Christensen* rationale is to the contrary and bears no relationship to an appropriate "family members" description. In *Christensen,* the California Supreme Court rejected a court of appeals decision that "close family members may recover damages for the emotional distress they suffer if remains are negligently . . . mishandled," 2 Cal.Rptr.2d 79, 820 P.2d at 183, and held that "the duty is *owed only to close family mem-*

*bers who were aware that funeral and/or crematory services were being performed, and on whose behalf or for whose benefit the services were rendered." Id.* (emphasis added).

Under the *Christensen* formulation, a rational relationship between the interest sought to be protected—freedom from negligent infliction of emotional distress—and those affected—the "immediate family members who are aware of the services and for whose benefit the services are being performed," majority opinion at 155, 28 P.3d at 990—is difficult to discern. The *Christensen* limiting qualification of "immediate family members" adopted by the majority, is likely to spur collateral litigation. Awareness of the funeral services as opposed to the desecration seems an irrelevant factor and the further condition that a putative plaintiff must benefit from the services performed appears contractual in nature. Both qualifications are remote from the true interest sought to be protected and potentially disqualify persons who should otherwise be entitled to recover. The appropriate "class" of plaintiffs, then, should be that defined by the principles established in *Rodrigues.*

---

**5.** The actual amount of damages any plaintiff would actually recover would, as in similar assessments of tort damages, depend on the circumstances of each case and proof of the nature of the relationship between the particular plaintiff and the deceased person.

**6.** The term "reciprocal beneficiary" is tied to the provisions of HRS chapter 572C and is thus less

satisfactory for common law application. Those described as reciprocal beneficiaries in HRS § 572C–3 and –4 (Supp.2000) would be included as being among those occupying an equivalent status.