A98A2043. HALL et al. v. CARNEY et al.
(511 SE2d 271)

JOHNSON, Chief Judge.

Charles and Judith Hall sued William Carney and Dewitt Everett for negligent and intentional infliction of emotional distress and for wrongful interference with an easement of burial. The Halls alleged that Carney and Everett maliciously, wilfully and wantonly ordered the sheriff's department to excavate the grave site containing the remains of their child. The Halls appeal from the order of the superior court order granting summary judgment to Carney and Everett. We affirm.

The facts construed in a light most favorable to the Halls are as follows: The Halls' child was stillborn in 1960 and was buried at a cemetery in Austell. In 1994, the Halls obtained the necessary county permits to disinter the child and rebury him in a family plot at the Pleasant Valley Cemetery in Adairsville ("the cemetery"). Members of the Hall family went to the cemetery and dug a grave. The child's body was laid to rest after an elder from the Halls' church in Dahlonega conducted a dedication service. The grave was marked with a small wooden cross; no name marker was placed at the grave.

For many years, the Hall family has had a family burial plot in the cemetery. Carney and Everett were members of the Pleasant Valley Baptist Church's cemetery committee ("the cemetery committee"). Although the record is silent whether the cemetery is privately or community owned, members of the cemetery committee have acted as caretakers of the cemetery for years. Carney, as a cemetery committee member, was responsible for certain activities regarding the cemetery, including the planning and coordination of burials. The

Halls knew this and, in fact, Charles Hall previously had contacted Carney when another family attempted to claim a portion of the Hall family plot. Carney advised Hall regarding this matter and undertook to find another plot for the other family. Judith Hall has known since the 1970s that the church is "in charge of taking care" of the cemetery. Nevertheless, the Halls did not inform the cemetery committee of their plans to bury their child's remains in the cemetery.

On the day of the reburial, a member of the Pleasant Valley Baptist Church saw several motor vehicles enter the cemetery and saw the vehicles' occupants begin to dig a hole. The church member returned the next day and found a freshly dug site in the same location. Because she considered the situation suspicious, the church member reported it to Carney. Carney and Everett went to the cemetery and found a freshly dug area which appeared to be a grave. It was located within the Halls' family plot. Carney and Everett notified the Bartow County Sheriff's Department.

When a deputy arrived, Carney and Everett told her that the cemetery committee had not been asked for permission to bury anyone in the cemetery on the previous day. Carney and Everett asserted that the burial was unauthorized and demanded that the site be opened. They also speculated that a "satanic" burial might have occurred. The deputy refused to open the site and called her supervisor. An investigator was sent to the cemetery. Carney and Everett again demanded that the site be opened and its contents removed from the cemetery. The investigator called his supervisor who instructed that the suspected grave site be opened. The investigator needed a shovel and Carney and Everett said they would get him one. A church member then provided a shovel, and the investigator opened the site and unearthed a wooden box. The investigator took the box and its contents to the sheriff's office. The Halls subsequently called the sheriff's office and reported that their child's body was missing. They were allowed to claim the baby's body after they went to the sheriff's office and showed that they had a county disinterment and burial permit.

The trial court held that the excavation and removal of the child's remains was a legal action by law enforcement personnel and that Carney and Everett could not be held responsible for the actions of the sheriff's department. The trial court also held that Carney and Everett, as cemetery committee members, were at least de facto caretakers of the Pleasant Valley Cemetery and did not act maliciously, wilfully or without regard for the Halls' feelings. Thus, the trial court concluded that Carney and Everett could not be held liable for the emotional distress which the Halls suffered or for any trespass on the Halls' family plot.

1. Summary judgment is appropriate when the admissible evi-

dence of record shows there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). In ruling on a motion for summary judgment, the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions arising therefrom most favorably toward the party opposing the motion. *Moore v. Goldome Credit Corp.*, 187 Ga. App. 594, 595-596 (370 SE2d 843) (1988).

2. (a) *Negligent infliction of emotional distress*: "In a claim concerning negligent conduct, a recovery for emotional distress is allowed only where there is some impact on the plaintiff, and that impact must be a physical injury. [Cit.]" *Ryckeley v. Callaway*, 261 Ga. 828 (412 SE2d 826) (1992). There is no evidence that the plaintiffs suffered any physical injury in this case. Accordingly, there can be no recovery based on a claim of negligent infliction of emotional distress.

(b) *Intentional infliction of emotional distress*: While recovery can be had without the necessity of an impact when the conduct is malicious, wilful or wanton, such conduct "will not warrant a recovery for the infliction of emotional distress if the conduct was not directed toward the plaintiff." Id. at 829. No evidence exists that the conduct of Carney and Everett was directed toward the Halls. Neither does a genuine issue of material fact exist that Carney's and Everett's conduct was malicious, wilful or wanton. Therefore, any claim based upon intentional infliction of emotional harm must fail. See id.; *Wellborn v. DeKalb County &c.*, 227 Ga. App. 377, 379 (3) (489 SE2d 345) (1997).

A grant of summary judgment must be affirmed if it is right for any reason. *Hanna v. McWilliams*, 213 Ga. App. 648, 651 (3) (446 SE2d 741) (1994). The trial court did not err in granting summary judgment to Carney and Everett as to the Halls' claims for the negligent or intentional infliction of emotional distress.

3. The trial court also did not err in granting summary judgment to Carney and Everett as to the claim of trespass. The allegations in the complaint do not give sufficient notice to allow a responsive pleading as to a claim of trespass. See generally *Allen v. Bergman*, 201 Ga. App. 781, 783 (3) (b) (412 SE2d 549) (1991). While the allegations do give sufficient notice as to a claim of intentional interference with an easement of burial, there exist no genuine issues of material fact regarding either a claim of intentional interference with an easement of burial or a claim of trespass.

The record contains no evidence establishing the nature and conditions of the property rights, if any, granted to the Halls regarding the family burial plot. Neither does the record contain any evidence as to the terms or conditions for the use of these plots. When deposed,

Judith Hall testified that as far as she knew, neither she nor her family had any sort of deed to any property in and about the cemetery. The Halls show only by innuendo or conjecture that they have any title to or burial easement rights in the Halls' family plot. We cannot infer from the state of this record that such rights exist or, if they did exist, the scope of or conditions attached to such rights. An inference cannot be based upon evidence which is too uncertain or speculative or which raises merely a conjecture as to the existence of a material fact. *Derry v. Clements*, 197 Ga. App. 173, 174 (397 SE2d 594) (1990).

Furthermore, although it is contested whether Carney and Everett insisted that the sheriff's office open the grave and remove the child's body, the evidence is uncontroverted that the investigator opened the grave only after calling his superior officer and being instructed to do so. Carney and Everett had no control over the scope of the law enforcement investigation once it commenced. Thus, the facts in this case are distinguishable from those in *Moody v. Dykes*, 269 Ga. 217, 218-219 (1) (496 SE2d 907) (1998), which was a suit for continuing trespass of burial plots. In *Moody*, a member of the Moody family became "an integral part of the plan to intentionally defy the grant of ownership of the plots" to the Dykes family and to prevent them from exercising dominion or control over the contested grave sites "[b]y overseeing the placement of the new burial slabs" on the sites. Id. at 219 (2).

The facts of this case also are distinguishable from those in *Habersham Mem. Park v. Moore*, 164 Ga. App. 676, 679 (297 SE2d 315) (1982), which was a suit for wrongful interference with the right of burial. In *Habersham*, the defendant engaged in a confrontation and interfered with the burial as it was taking place; further, documentary evidence was introduced which included the deed to the burial plot and the cemetery's rules.

*Judgment affirmed. Smith and Barnes, JJ., concur.*

DECIDED FEBRUARY 1, 1999.

*Bodker, Ramsey & Andrews, Stephen C. Andrews, Harry J. Winograd, William A. O'Dell*, for appellants.

*Magruder & Sumner, J. Clinton Sumner, Jr., Clay M. White, John R. Weech*, for appellees.