## A01A1352. HILL et al. v. CITY OF FORT VALLEY et al.
### (554 SE2d 783)

RUFFIN, Judge.

In 1981, Edwards Funeral Home interred Mrs. Logie Postell at Willow Lake Memorial Gardens Cemetery, which is owned by the City of Fort Valley. In 1997, the funeral home discovered the casket had been buried in the wrong plot, and, at the City's expense, the casket was removed and reburied in the correct plot. Mrs. Postell's children ("plaintiffs") sued the funeral home and the City, asserting claims for intentional infliction of emotional distress, trespass, and wrongful burial. Both defendants moved for summary judgment. The trial court granted both motions, and the plaintiffs appeal. For reasons that follow, we affirm.

1. In reviewing a trial court's grant of summary judgment, we conduct a de novo review of the law and evidence, and we construe all evidence, inferences, and conclusions in favor of the party opposing the motion.[1] So viewed, the relevant facts show that in 1974, the City purchased Willow Lake Memorial Gardens Cemetery from Edwards Funeral Home. Although the funeral home no longer owned the cemetery, it continued to sell lots on behalf of the City and conduct burials at the cemetery. The City was responsible for authorizing contracts for the sale of lots, identifying the grave site, and maintaining the cemetery.

After Mrs. Postell died in February 1981, her family shared the cost of purchasing four plots at the cemetery through Edwards Funeral Home. Although Mrs. Postell's children contributed to the cost of the plots, the deed was recorded in the name of R. B. Postell, Mrs. Postell's brother. The family members agreed that one plot would be reserved for R. B. Postell, but that the remaining two plots could be used for the children. At the time of Mrs. Postell's death, the funeral home used grave markers to identify the plot for the gravediggers.

In February 1997, R. B. Postell died, and he was interred at the cemetery next to his sister. In June of that year, R. B. Postell's children contacted Claybon Edwards, the owner of the funeral home, regarding improvements to the grave site. In connection with the proposed improvements, Edwards visited the grave with R. B. Postell's daughter, Bertha Cook, and two of Mrs. Postell's children, Annie Postell and Bertha Jones. When Edwards returned to the funeral home, he discovered that Mrs. Postell was not buried on the correct plot. Upon making the discovery, Edwards asked Cook to come to the cemetery, and Cook returned with one of her cousins.

---

[1] See *Northside Hosp. v. Ruotanen*, 246 Ga. App. 433-434 (541 SE2d 66) (2000).

According to Edwards, he discussed the situation with the two and received permission to move Mrs. Postell. However, neither Bertha Jones nor Annie Postell recalled having any such discussion with Edwards. In two affidavits, Bertha Cook gave inconsistent testimony regarding her discussion with Edwards. In one affidavit, she averred that, when meeting with Edwards, "at no time . . . did we discuss moving the graves of my relatives" and that she never "authorize[d] anyone to move the graves of [her] relatives." In a subsequent affidavit, however, she admitted that Edwards told her that Mrs. Postell's "grave was on the next lot over and would have to be moved" and that she gave this information to Annie Postell.

On July 9, 1997, at the City's expense, Mrs. Postell's grave was moved four feet to the correct plot. When Annie Postell learned that the grave had been moved, she, Bertha Jones, and their brother, Henry Hill, went to the cemetery and saw that their mother's grave had been disturbed and that the headstone had been moved. In February 1999, the plaintiffs sued the City and the funeral home for trespass and intentional infliction of emotional distress. In January 2000, plaintiffs filed an amended complaint, which added a claim for wrongful burial.

Both defendants filed motions for summary judgment, which the trial court granted. In its order, the trial court found, inter alia, that the evidence failed to establish a claim of intentional infliction of emotional distress, that the plaintiffs lacked standing to bring a claim for trespass, and that the claim for wrongful burial was barred by the statute of limitation. As the trial court ruled correctly, we affirm.

(a) To sustain a claim for intentional infliction of emotional distress, the plaintiffs must prove the following four elements:

(1) The conduct must be intentional or reckless; (2) The conduct must be extreme and outrageous; (3) There must be a causal connection between the wrongful conduct and the emotional distress; and (4) The emotional distress must be severe. Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law.[2]

To warrant the imposition of liability for such claim, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."[3] The evidence

---

[2] Id. at 435.
[3] Id.

presented here does not rise to this level as a matter of law.

As the plaintiffs do not allege that they suffered any physical injury or pecuniary loss as a result of the disinterment and reburial of their mother, their recovery against the City and funeral home depends on a showing that the conduct of the two defendants was "malicious, wilful or wanton."[4] Even if the City and funeral home were insensitive or negligent in failing to obtain the express permission of the plaintiffs prior to moving their mother's grave, there is nothing in the record to raise such conduct to the degree of wilfulness or wantonness that is necessary for a claim of intentional infliction of emotional distress.[5]

Even assuming that the defendants' actions can be characterized as wilful or wanton, plaintiffs' claim for intentional infliction of emotional distress still must fail. To sustain such claim, the plaintiffs must show that the conduct of the defendants was directed toward them.[6] The record here shows that, in moving the casket containing the remains of Mrs. Postell, the defendants were trying to correct a mistake that had been made many years earlier. Although the defendants should have shown more consideration for the next of kin, there is nothing to suggest that the defendants' conduct was directed toward the plaintiffs.[7] Thus, the plaintiffs are unable to sustain a claim for intentional infliction of emotional distress,[8] and the trial court properly granted the defendants' motions for summary judgment on this claim.

(b) The plaintiffs assert "[t]hat the disturbance of the remains of [Mrs. Postell] by the Defendants was a trespass upon the burial plot owned by the Plaintiffs." Notwithstanding the plaintiffs' contention that they owned the plot, the undisputed evidence shows that the plot had been deeded solely to R. B. Postell, and thus the plaintiffs, who are not the heirs of R. B. Postell, have no property interest in the lot.[9] Although Georgia courts recognize a right of recovery for interference with an easement of burial, "the property right [is] acquired by the purchase of [the] cemetery plot."[10] Accordingly, the trial court

---

[4] (Punctuation omitted.) *Edwards v. A. S. Turner & Sons, Inc.*, 181 Ga. App. 105, 106 (2) (351 SE2d 505) (1986).

[5] See id. See also *Northside Hosp.*, supra (hospital official's conduct toward bereaved, although rude and insensitive, was not outrageous); *Hall v. Carney*, 236 Ga. App. 172, 174 (2) (b) (511 SE2d 271) (1999) (conduct of church members in disinterring body of child not malicious, wilful, or wanton).

[6] See id.

[7] See id.

[8] See *Ryckeley v. Callaway*, 261 Ga. 828, 829 (412 SE2d 826) (1992).

[9] See *Black v. Ga. Mem. Park Cemetery*, 173 Ga. App. 290, 291 (2) (325 SE2d 901) (1985).

[10] (Punctuation omitted.) Id.

correctly concluded that the plaintiffs lack standing to pursue a claim for trespass.[11]

The plaintiffs further assert that they have a property interest in their mother's remains and that the defendants "committed a trespass against their personalty when the [defendants] moved their mother without permission." The trial court found that "[t]here is no evidence in the record showing that the body of Ms. Postell was harmed or damaged in any way." Thus, the court reasoned, "no action can lie for trespass to the body."

It is true that, as Mrs. Postell's children, the plaintiffs have a "quasi-property right" in her body.[12] Accordingly, the plaintiffs have standing to bring a claim for trespass to the body. Pursuant to OCGA § 51-10-3, "[a]ny unlawful abuse of or damage done to the personal property of another constitutes a trespass for which damages may be recovered." Here, there is no evidence that the body was damaged in any way by the move. According to the affidavit of Horace Bell, who was present when the grave was moved, the burial vault remained sealed at all times, and the remains were not disturbed. Thus, the sole issue is whether moving the body constituted an unlawful abuse of the body.

The record shows that, upon discovering that Mrs. Postell was buried on the wrong plot, the defendants had the casket removed and reburied in the correct plot. Although the defendants failed to secure the permission of the next of kin prior to moving the casket, the mere movement of the casket from a plot where the casket had no right to be to the correct burial plot does not rise to the level of unlawful abuse necessary to sustain a claim for trespass to the body itself.[13] Here, the plaintiffs' true complaint is not for any trespass to the body, but to the plot.[14] For the reasons discussed above, however, they are unable to sustain such claim.

(c) In their amended complaint, the plaintiffs assert that, in 1981, the defendants failed to properly mark the boundaries of the grave site, which resulted in their mother being buried in the wrong place. The trial court concluded that any claim for wrongful burial in 1981 is barred by the statute of limitation. Again, we agree.

The plaintiffs do not contend that the defendants intentionally mismarked the grave site. Thus, their claim sounds in negligence,

---

[11] See id. See also *Hall*, supra at 174-175 (3).

[12] *Wages v. Amisub of Ga.*, 235 Ga. App. 156, 157 (1) (508 SE2d 783) (1998).

[13] Cf. *Alternative Health Care Systems v. McCown*, 237 Ga. App. 355, 356 (2) (a) (514 SE2d 691) (1999) (plaintiff "asserted a claim of trespass on her quasi-property rights in the body of her deceased husband, arising from the removal of [his] eyes despite her refusal to consent").

[14] Indeed, in their complaint, the plaintiffs assert only a claim for trespass to the plot.

and such claim must be brought within four years.[15] Although the plaintiffs clearly brought their claim well beyond four years, they argue that the statute of limitation was tolled by the fraud of the defendants.

OCGA § 9-3-96 provides that if a defendant is "guilty of a fraud by which the plaintiff has been debarred or deterred from bringing an action, the period of limitation shall run only from the time of the plaintiff's discovery of the fraud." To avoid summary judgment based on the statute of limitation, however, the plaintiffs are "required to present some evidence of actual fraud."[16] Here, there is no evidence that the defendants acted fraudulently. To the contrary, Edwards testified that until 1997 he had no knowledge that Mrs. Postell was buried on the wrong plot.

The plaintiffs essentially argue that, as Edwards was responsible for Mrs. Postell's burial, he had to have known that she was buried in the wrong plot and that his failure to disclose this information constituted concealment. However, such conclusory statements are not sufficient to survive summary judgment.[17] Accordingly, the trial court correctly concluded that this claim is barred by the statute of limitation.

2. In their second enumeration of error, the plaintiffs contend that the trial court erred in excluding the affidavit of Martha Harris, in which she purported to authenticate City records regarding other wrongful burials at the cemetery. Pretermitting whether the trial court should have considered the affidavit, our holding in Division 1 renders this issue moot.

*Judgment affirmed. Johnson, P. J., and Ellington, J., concur.*

DECIDED SEPTEMBER 20, 2001 — 

*Ronny E. Jones*, for appellants.

*Miller & Towson, James V. Towson, Joel A. Howe, Jones, Cork & Miller, Sharon H. Reeves, Thomas C. Alexander, Gregory Homer*, for appellees.

---

[15] See *Armstrong v. Royal Lakes Assoc.*, 232 Ga. App. 643, 644 (1) (502 SE2d 758) (1998) ("With respect to [appellants'] negligence claim, the statute of limitation on an action for damages to realty is four years from the date the right of action accrues.").

[16] *AAA Truck Sales v. Mershon Tractor Co.*, 239 Ga. App. 469, 471 (1) (521 SE2d 403) (1999).

[17] See *Wilson v. Phillips*, 230 Ga. App. 290, 292 (495 SE2d 904) (1998) (plaintiffs "failed to show any act or artifice by [defendants which would] deter them from timely obtaining the true facts").