## A03A0438. HANG et al. v. WAGES & SONS FUNERAL HOME, INC.

(585 SE2d 118)

RUFFIN, Presiding Judge.

The Tep family sued Wages & Sons Funeral Home, Inc. ("Wages"), alleging that Wages "willfully, wantonly and maliciously cremated the body of Khin Tep,"[1] causing extreme emotional distress. In their 12-count complaint, the Tep family sought general and nominal damages, damages for injury to their "peace, happiness, and feelings," punitive damages, and attorney fees.[2] The trial court granted Wages partial summary judgment on the emotional distress claim, ruling that, because the Tep family had suffered no physical injury, they can only recover nominal damages. The Tep family appeals, and for reasons that follow, we affirm.

On appeal, we review the trial court's grant of partial summary judgment de novo and construe the evidence, inferences, and conclusions in favor of the Tep family, the party that opposed the motion.[3] So viewed, the evidence shows that on March 2, 1998, Khin Tep died from heart failure at the Gwinnett Medical Center. Because the Tep family is Buddhist and family members had previously attended a Buddhist funeral at Wages & Sons Funeral Home, they made funeral arrangements with Wages. According to Rith Tep, the family informed Wages that they wanted a "traditional and religious [Cambodian] ceremony." The family assumed that Wages was familiar with Cambodian Buddhist funeral rituals and, therefore, gave few specific directions about the funeral preparations. They did, however, arrange for Wages to prepare Khin Tep's body for viewing and schedule a service at the funeral home for March 7, 1998, which was

---

[1] Plaintiffs are the widow, sons, and daughters of the deceased, Khin Tep: Each Hang; Rithea Tep; Rith Tep; John Tep; Tom Tep; Mono Tep; Rany Mean; Raya Pho; Tara Tep; and Sothara Tep.

[2] The Tep family also asserted a cause of action for fraud, but the trial court granted summary judgment to Wages on this claim, and the family does not challenge the ruling on appeal.

[3] See *Hill v. City of Fort Valley,* 251 Ga. App. 615 (1) (554 SE2d 783) (2001).

to be performed by monks and family members. The family also informed Wages that they wanted Khin Tep cremated on March 7 after the funeral service and asked that the remains not be powdery. The Teps desired bone fragments to remain for use during a ceremony later.[4]

Notwithstanding these arrangements, a Wages employee, Eric Bailey,[5] cremated Khin Tep's body on March 2. In his deposition, Bailey testified that he misread the dates on the cremation authorization form and thought that the date the form was executed, March 2, was the required cremation date. Bailey further testified that, although he started the cremation on March 2, he does not know who removed the remains from the crematory. Likewise, Howell Scott, a Wages employee who helped Bailey put the body in the crematory, could not recall whether he was present when the remains were removed. In fact, it appears that Wages does not know who took the remains from the crematory, processed them, and placed them in an urn for storage. And, although accompanying paperwork indicated that the urn contained Khin Tep's remains, due to the aforementioned gap in the chain of custody, the Tep family "is concerned as to whether they have ever actually received their father's remains."

It is unclear from the evidence precisely when Wages learned that the body had been prematurely cremated. Bailey testified that, at some point between March 3 and March 5, Wages's funeral director, Jeffrey Wages, informed him of the error. Jeffrey Wages testified, however, that Wages first learned of the mistake on March 5, after an employee went to retrieve the body from the morgue to prepare it for viewing. Jeffrey Wages informed the Tep family about the mishap on March 5.

Notwithstanding the premature cremation, on March 7, the Tep family proceeded with the scheduled funeral service. The service was conducted with an empty, closed coffin, and neither the mourners nor the monks were told about the mishap. The ceremony ended when family members placed the empty coffin inside the crematory. Later that day, Jeffrey Wages presented the family with a bag containing remains. During a ceremony at the temple that evening, the family discovered that Wages had overprocessed Khin Tep's remains and

---

[4] As described in the record, Buddhist custom requires that the body be cremated until only small bone fragments remain. The bone fragments are then ceremoniously distributed to family members, washed in coconut milk, and wrapped in gold foil. The remains are kept by the family in an urn. In contrast, cremation remains are typically processed after being removed from the crematory to reduce any remaining bone fragments.

[5] In their appellate brief, the Tep family asserts that Bailey was "an unlicenced and unsupervised funeral home employee with a night school diploma." However, the family's supporting record cites a block of 86 pages which violates Court of Appeals Rule 27 (c) (3) (i), which requires a "specific reference to the record or transcript."

that the bone fragments were too small to be handled according to Buddhist rituals.

Due to these mistakes, Wages offered to provide the funeral services free of charge. When the Tep family rejected the offer, Wages made a monetary donation to the Teps' temple.

The Teps subsequently filed the instant action against Wages, alleging that Wages knew how to appropriately handle the deceased body, yet failed to handle it "non-negligently and with the upmost dignity." The family further alleged that Wages improperly trained its employees, committed fraud by concealing the premature cremation, and interfered with the family's right to " 'closure.' " Based on these causes of action, the family sought general and nominal damages for severe emotional distress and injury to peace, happiness, and feelings. In addition, the family sought punitive damages, alleging that Wages acted wilfully and with malice, wantonness, oppression, and an entire want of care raising the presumption of conscious indifference to consequences. Finally, the family prayed for litigation expenses, including attorney fees based upon Wages's alleged bad faith and litigiousness.

Wages moved for partial summary judgment, arguing that: the Tep family is limited to a recovery of nominal damages; the family's fraud and litigation expenses claims should be dismissed; and Georgia does not recognize a cause of action for "willful, wanton and reckless interference with 'closure' as prayed for in Counts Nine and Ten of the Complaint." The trial court granted Wages's motion, concluding that: (1) Georgia's impact rule precluded the Tep family from recovering general damages for their alleged emotional distress; and (2) the family failed to present evidence supporting their claims for fraud, punitive damages, and litigation expenses. Only the first ruling is at issue in this appeal.

Georgia applies the impact rule to cases in which a party seeks to recover for emotional distress in a claim involving negligent conduct.[6] The impact rule has three elements:

> (1) a physical impact to the plaintiff; (2) the physical impact causes physical injury to the plaintiff; and (3) the physical injury to the plaintiff causes the plaintiff's mental suffering or emotional distress.[7]

A party claiming negligent infliction of emotional distress must therefore show a physical impact resulting in physical injury. "On the

---

[6] See *Ryckeley v. Callaway*, 261 Ga. 828 (412 SE2d 826) (1992); *Canberg v. City of Toccoa*, 255 Ga. App. 890, 891 (1) (567 SE2d 21) (2002).

[7] *Canberg*, supra.

other hand, where the [defendant's] conduct is malicious, wilful, or wanton, recovery can be had without the necessity of an impact."[8]

In granting Wages summary judgment on the Tep family's punitive damages claim, the trial court found no evidence of "wilful, wanton, malicious, intentional, or even grossly negligent conduct." Because the Teps have not enumerated this punitive damages ruling as error on appeal, they are now bound by it.[9] Instead, they contend that the policies underlying the rule preclude its application in this case. The Teps also do not allege that they suffered any physical injury or otherwise meet the requirements of the impact rule.

In *Hill v. City of Fort Valley*, however, we addressed a similar claim. In that case, the trial court granted summary judgment to a funeral home on the plaintiffs' claims for emotional distress based on the mishandling of a corpse.[10] The funeral home discovered, several years after the funeral, that it had buried the decedent in the wrong plot. According to the plaintiffs, the funeral home then moved the grave to the correct plot without their consent. Family members of the deceased subsequently sued the funeral home for intentional infliction of emotional distress. In affirming the trial court's ruling, we noted that because "the plaintiffs [did] not allege that they suffered any physical injury or pecuniary loss . . . their recovery . . . depend[ed] on a showing that the conduct of the . . . defendants was 'malicious, wilful or wanton.'"[11] We thus recognized that, absent pecuniary loss, physical injury, or wilful or wanton conduct, the impact rule precludes recovery for emotional distress in such a mishandling case.[12]

The Tep family nevertheless contends that the Supreme Court's decision in *Lee v. State Farm Mut. Ins. Co.*[13] permits an award of damages for emotional distress even without physical injury. In *Lee*, a mother and daughter were seriously injured in an automobile collision. The mother witnessed her daughter's suffering, which ended when the daughter died one hour later. The mother sued to recover for the emotional distress she experienced *from watching her daughter suffer*. Although the mother's physical injuries from the collision did not cause this emotional distress, as required under the impact rule, the Supreme Court, in reversing the Court of Appeals, ruled

---

[8] *Ryckeley*, supra. See also *Canberg*, supra at 892 (2).
[9] See *Hooper v. Harris*, 236 Ga. App. 651, 652 (1) (512 SE2d 312) (1999) (unappealed rulings are final).
[10] See *Hill*, supra at 615-617 (1) (a).
[11] Id. at 617.
[12] See id.
[13] 272 Ga. 583 (533 SE2d 82) (2000).

that the claim was nonetheless sustainable.[14] After extensively discussing the history of the rule, the Court reasoned that:

> The circumstances of this case clearly invite this Court to reject the impact approach. . . . [T]his Court recognizes that the policy concerns behind our traditional impact rule are not extant in this case, and there is no meritorious reason in an appropriate and compelling situation to refuse to extend recovery for emotional distress to an incident in which the distress is the result of physical injury negligently inflicted on another. The circumstance of this case is such an appropriate and compelling situation. When, as here, a parent and child sustain a direct physical impact and physical injuries through the negligence of another, and the child dies as the result of such negligence, the parent may attempt to recover for serious emotional distress from witnessing the child's suffering and death without regard to whether the emotional trauma arises out of the physical injury to the parent. This is in accord with the precepts of the impact approach and appropriately restricts recovery to those directly affected by the defendant's negligent act or omission.[15]

Although the Supreme Court departed from the impact rule in *Lee*, the departure was narrowly tailored to the circumstances in that case. The Court was careful to add that:

> the impact rule, even with its shortcomings, is not without benefit. And certainly, it would be imprudent to abandon over a hundred years of Georgia precedent. What is more, we decline to adopt any rule which might, in effect, create a separate tort allowing recovery of damages for the negligent infliction of emotional distress.[16]

We are sympathetic to the circumstances of the Tep family, but this case is governed by the impact rule. None of the plaintiffs in the instant case sustained any physical injury or pecuniary loss. Nor have the plaintiffs proved that Wages's conduct was "malicious, wilful, or wanton."[17] Like the plaintiffs in *Hill*, they are precluded from recovering damages for emotional distress.[18] Accordingly, the trial

---

[14] See id. at 588.
[15] (Citations and footnote omitted.) Id.
[16] Id.
[17] See *Hill*, supra.
[18] See id. Compare *Lee*, supra.

court did not err in finding the Tep family could only recover nominal damages.[19]

*Judgment affirmed. Smith, C. J., and Miller, J., concur.*

DECIDED JUNE 19, 2003 —
RECONSIDERATION DENIED JULY 8, 2003 — 

*Richard D. Hobbs*, for appellants.
*Mabry & McClelland, James T. Budd, Brian W. Sprinkle*, for appellee.

---

[19] See *Westview Cemetery v. Blanchard*, 234 Ga. 540, 544 (2) (B) (216 SE2d 776) (1975) (in case alleging wrongful movement of corpse and grave marker within cemetery, Supreme Court noted that "[i]f 'mental pain and suffering' [are] not accompanied by physical injury or pecuniary loss, recovery is allowed only if the conduct complained of was 'malicious, wilful, or wanton'"); *Hill*, supra; *Edwards v. A. S. Turner & Sons, Inc.*, 181 Ga. App. 105, 106 (2) (351 SE2d 505) (1986) (no recovery for emotional distress permitted in case involving alleged improper removal of remains from cemetery plot absent pecuniary loss, physical injury, or wilful or wanton conduct).