**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 11, 2022**

# In the Court of Appeals of Georgia

A21A1513. ELEY et al. v. FEDEE.

BROWN, Judge.

Maretris Eley ("the mother"), in both her individual capacity and as the natural parent and legal guardian of her twin daughters (Nadia and Naomi), filed a negligence action against Felicia Fedee following an automobile collision with Fedee. The mother appeals from the trial court's grant of partial summary judgment to Fedee on her daughters' claims for emotional distress damages. She contends that summary judgment was inappropriate because (1) the impact rule does not apply to the negligence claim asserted for her daughters; (2) material issues of fact exist as to whether her daughters suffered a physical injury in the accident; (3) the pecuniary loss rule should apply to allow a recovery for monetary expenses incurred on her daughters' behalf as a result of the accident; and (4) treating minor and adult

plaintiffs differently violates the Equal Protection Clauses of the United States and Georgia Constitutions. For the reasons set forth below, we affirm.[1]

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant. See *Home Builders Assn. of Savannah v. Chatham County*, 276 Ga. 243, 245 (1) (577 SE2d 564) (2003). So viewed, the record shows that Fedee admits that she was at fault for an accident in which she pulled her car in front of the car driven by the mother.[2] It is undisputed that the twins were passengers in the vehicle at the time of the October 28, 2017 accident. The "driver's

---

[1] We have circulated this decision among all nondisqualified judges of the Court to consider whether this case should be passed upon by all members of the Court. Fewer than the required number of judges, however, voted in favor of a hearing en banc on the question of disapproving *Warnock v. Sandford*, 349 Ga. App. 426 (825 SE2d 922) (2019).

[2] While the mother's brief asserts numerous other facts surrounding the accident and its aftermath, the record cites provided are to her brief below, which in turn cites to various portions of her deposition. The record before us includes only a six-page excerpt from her deposition. Accordingly, we will not consider facts supported from portions of the mother's deposition that are not before us. See *Gramiak v. Beasley*, 304 Ga. 512, 516 (I) (C) (820 SE2d 50) (2018) ("Arguments and representations made in court briefs . . . do not constitute record evidence to support a finding of fact.").

side front" of the mother's car struck the "driver's side rear" of Fedee's car. Fedee testified that the collision felt "hard" to her and felt like a seven on a scale of one ("light tap") to ten ("just demolished"). Fedee's speed was approximately 5-10 mph when she was struck by the mother's car. There is no evidence of the mother's speed before the impact. After the impact, Fedee "blacked out for a little bit." When she awoke, her car was facing oncoming traffic, and she drove across multiple lanes of traffic to a nearby convenience store with bystander assistance. Fedee left the convenience store in an ambulance; her back was injured in the accident in a way that cannot be determined from the record before us. A photograph of Fedee's car after the accident shows the rear bumper hanging off the back; the trunk of the car appears to be otherwise intact. A photograph of the mother's car after the accident shows damage to the front driver's side and the hood is buckled. There does not appear to be any visible fire damage.

In her deposition, the mother testified unequivocally that neither twin suffered "any physical injury as a result of the accident." She also stated that they did not have "any cuts, scrapes, bruises, [or] anything like that." In her response to an interrogatory asking for a detailed statement of all injuries, the mother wrote that the twins, who were nine years old at the time of the accident,

were traumatized by the collision. They were each diagnosed with Acute Stress Disorder and anxiety, and prescribed anti-anxiety medications. They continue to experience anxiety as passengers, as well as great fear for their mother's safety when she is driving or riding in a car.

The mother described her own injuries as follows:

a burn and bruising to her left arm, dizziness, vertigo and nausea, pain in the right side of her neck, right side of her lower back shooting down into her right leg, sciatica, and ear pain. She experienced anxiousness as a result of the incident. She continues to experience right side, lower lumbar pain.

Over two years after the accident, the mother's medical expenses totaled $2,712 and the twins' therapy expenses totaled $400. The mother made no claim for lost wages as a result of the accident.

In July 2018, approximately nine months after the accident, the twins saw Dr. Hopkins-Naylor, "a doctor of psychology," on two occasions approximately two weeks apart. Her treatment notes contain no indication of any physical manifestation of injury from the accident. There is no indication that the twins suffered from rapid heart rate, chest pain, stomach pain, or headaches. Both girls acknowledged pretending to be physically ill to avoid riding the school bus. The treatment notes also indicate that the mother stated: "car caught on fire"; "girls in back seat"; and "mom

4

went to ER - 3rd days [sic]." Nadia stated that she is "sad" the car was "ruined" and that it "was smoking and the air bag came out" as a result of the accident. Naomi relayed that "smoke was in the car" and she "had to get out."

Fedee filed a motion for partial summary judgment, asserting that the impact rule precluded a negligence claim for the girls because the record contains no evidence that they were physically injured as a result of the impact.[3] In an affidavit submitted in opposition to Fedee's motion for partial summary judgment,[4] Dr. Hopkins-Naylor opined that both girls

> presented with observable symptoms that included being on edge, nervousness, and worry. Each of these observable symptoms can create stress and discomfort on the physical condition of a person. For [the twins], that was the case. Both . . . described the collision and aftermath of the collision in terms that can be categorized as acute stress disorder.
>
> The DSM 5 sets the diagnostic criteria for acute stress disorder. Symptoms can include intrusive thoughts, negative mood, avoidance,

---

[3] The motion did not seek summary judgment on the ground that the mother also cannot establish that the girls' emotional distress was caused by a physical injury sustained in the accident (prong three of the impact rule). See *Lee v. State Farm Mut. Ins. Co.*, 272 Ga. 583, 584-586 (I) (533 SE2d 82) (2000).

[4] This affidavit was executed over two years after Dr. Hopkins-Naylor saw the twins for what appears to be two visits over a roughly two-week period.

and arousal symptoms. Both children met the arousal symptoms with their hypervigilant behavior, sleep disturbance, and avoidance, such as not going to school and not getting on the bus. Their intrusive thought symptoms comprised of distressing memories and flashbacks, which included thinking about the collision at school and crying about it. These symptoms began immediately after the collision, and they were both still talking about the impact when they presented to me. It created an impairment to their going to school by riding the bus as they had done in the past and their mother had to drive them to school, where before she did not have to.

It is my opinion based upon a reasonable therapeutic probability that both . . . suffered physical symptoms of pain and somatic pain as a result of the collision, as well as emotional harm.

In addition to providing her specific opinion with regard to the twins, she averred:

When discussing their traumas, children and adults can experience rapid escalation or changes in mood; crying, anger, anxiety, or irritability; fear; hopelessness; and other psychological changes that can directly create a painful response in their bodies physiologically. One often hears of a bereaved person after the death of their loved one state that their chest hurts. Symptoms that indicate such physical-pain-inducing sensations include rapid heart rate; somatic pain such as stomach pain; chest pain, and headaches.

Nowhere in her affidavit does she state the specific physical pain suffered by the twins at any time after the accident.

With regard to her professional background, Dr. Hopkins-Naylor stated that she worked for the Georgia Center for Child Advocacy for five years providing "trauma-informed psychotherapy to child victims of sexual abuse," followed by ten years of "private practice" seeing children and adults "in an individual as well as a family setting." Her affidavit provides no information about her education and training other than asserting that she holds a doctorate in psychology.

The trial court granted the partial summary judgment motion in a detailed five-page order. It did so based upon its conclusion that the impact rule precluded a recovery for the girls, as well as non-binding precedent from this Court refusing to apply the pecuniary loss rule to claims by minors. See *Shamblin v. Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter Day Saints*, 352 Ga. App. 870, 878-879 (4) (836 SE2d 171) (2019) (physical precedent only).

1. The mother contends that the impact rule does not apply in this case because it applies only to "negligent infliction of emotional distress" cases rather than "straightforward claims of negligence." We disagree.

As the Supreme Court of Georgia has explained, the impact rule

has a long history with its origins in *Chapman v. Western Union Tel. Co.*, 88 Ga. 763 (15 SE 901) (1892), a case involving a plaintiff's unsuccessful attempt to recover damages from a telegraph company for mental pain and suffering resulting from the company's alleged failure to timely deliver a message to the plaintiff informing him of his brother's desperate illness. The *Chapman* court observed, [that so] far as mental suffering originating in physical injury is concerned, it is rightly treated as undistinguishable from the physical pain. On ultimate analysis, all consciousness of pain is a mental experience, and it is only by reference back to its source that one kind is distinguished as mental and another as physical. So in cases of physical injury, the mental suffering is taken into view. But according to good authorities, where it is distinct and separate from the physical injury, it cannot be considered.

(Citation omitted.) *Lee v. State Farm Mut. Ins. Co.*, 272 Ga. 583, 584-585 (I) (533 SE2d 82) (2000). It has long been established that the impact rule applies to claims "concerning negligent conduct." Id. at 584 (I); *Ryckeley v. Callaway*, 261 Ga. 828 (412 SE2d 826) (1992); *Hamilton v. Powell, Goldstein, Frazer and Murphy*, 252 Ga. 149, 150 (311 SE2d 818) (1984).

There are three policy reasons traditionally given for having the impact rule and denying recovery for emotional distress unrelated to physical injuries. First, there is the fear, that absent impact, there will be a flood of litigation of claims for emotional distress. Second, is the concern for fraudulent claims. Third, there is the perception that, absent impact,

8

> there would be difficulty in proving the causal connection between the defendant's negligent conduct and claimed damages of emotional distress.

*Lee*, 272 Ga. at 587 (II).

In its current form, Georgia's "impact rule has three elements: (1) a physical impact to the plaintiff; (2) the physical impact causes physical injury to the plaintiff; and (3) the physical injury to the plaintiff causes the plaintiff's mental suffering or emotional distress." *Lee*, 272 Ga. at 586 (I). A failure to meet any one of these requirements is fatal to a recovery. Id. Georgia courts previously have applied the impact rule to preclude recovery for emotional distress damages when a woman sought to recover in negligence against a property owner and manager after two men broke into her apartment and held her captive for fifteen minutes,[5] three women asserted general negligence claims against a hospital stemming from a hospital employee's conduct in creating false negative mammogram reports,[6] and a train engineer sought to recover damages for post-traumatic stress disorder arising out of a collision between a truck and the train when the train engineer suffered no physical

---

[5] *Owens v. Gateway Mgmt. Co.*, 227 Ga. App. 815, 816 (490 SE2d 501) (1997).

[6] *Jefferson v. Houston Hosps.*, 336 Ga. App. 478, 487 (3) (c), (e) (784 SE2d 837) (2016).

9

injury.[7] Compare *Grizzle v. Norsworthy*, 292 Ga. App. 303, 305 (1) (a) (664 SE2d 296) (2008) (trial court erred in granting summary judgment based upon impact rule where doctor's affidavit created issue of fact as to whether physical impact of car with train caused physical injury to train conductor).

The impact rule has no application in three circumstances. "In cases where mere negligence is not relied on, but the conduct complained of is malicious, wilful, or wanton, mental pain and suffering may be recovered without" application of the impact rule, *Montega Corp. v. Hazelrigs*, 229 Ga. 126, 127 (189 SE2d 421) (1972), provided that it is directed toward the plaintiff. *Lee*, 272 Ga. at 584 (I), n.2. Another

> carefully circumscribed exception to the physical impact rule, authorizing recovery of damages by a parent where the parent and her child both suffered a physical impact that caused them both physical injuries, even if the parent's emotional distress arose not only from her physical injury but also from watching her child suffer and die.

*Coon v. The Med. Center*, 300 Ga. 722, 734 (4) (797 SE2d 828) (2017). Finally, the pecuniary loss rule, which will be explained in more detail in Division 3, provides for

---

[7] *Shores v. Modern Transp. Svcs.*, 262 Ga. App. 293, 295 (1) (585 SE2d 664) (2003).

a third circumstance in which the impact rule does not apply. See *Oliver v. McDade*, 297 Ga. 66, n.1 (772 SE2d 701) (2015).

Relying upon this Court's decision in *Warnock v. Sandford*, 349 Ga. App. 426 (825 SE2d 922) (2019), the mother asserts that the impact rule only applies if a plaintiff pleads a "negligent infliction of emotional distress claim." In *Warnock*, the defendant in a negligence case arising out of a motor vehicle collision asserted that the trial court erred when it failed to instruct the jury on Georgia's impact rule. Id. In that case, it was undisputed that one of the injured plaintiffs suffered physical injuries in the accident. The defendant asserted that the pattern charge on mental pain and suffering given by the trial court failed to adequately explain the third prong of the impact rule (physical injury to the plaintiff causes the plaintiff's mental suffering or distress). Id. at 428. In the course of concluding that the trial court did not err in its charge, we stated:

> This Court has explained that the impact rule does not apply to all claims concerning negligent conduct. To the contrary, the impact rule applies specifically to claims for negligent infliction of emotional distress. . . . The [plaintiffs'] complaint did not include a claim for negligent infliction of emotional distress. Instead, it asserted straightforward claims of negligence and gross negligence and alleged that the injuries suffered by [the husband] and the other damages he and

11

his wife sustained were "the direct and proximate result of the [defendant's] misconduct." Consequently, the impact rule is not applicable in this case.

(Citation and punctuation omitted.) Id. at 429-430.

Georgia law does not support the conclusion in *Warnock* that the impact rule applies *only* to claims of "negligent infliction of emotional distress" rather than "straightforward claims of negligence and gross negligence." 349 Ga. App. at 429-430. In *Lee*, the Supreme Court of Georgia examined the impact rule and determined that its benefits outweighed its shortcomings. 272 Ga. at 588 (III). In so holding, it expressly "decline[d] to adopt any rule which might, in effect, create a separate tort allowing recovery of damages for the negligent infliction of emotional distress." Id. See also *Holbrook v. Stansell*, 254 Ga. App. 553, 554 (1) (562 SE2d 731) (2002) ("There is no independent tort in Georgia for negligent infliction of emotional distress."). While the parlance "negligent infliction of emotional distress" has crept into our case law since the Supreme Court of Georgia's decision in *Lee*,[8] and a

---

[8] See *Coon*, 300 Ga. at 734 (4) ("Georgia follows the physical impact rule for claims of negligent infliction of emotional distress. . . ."); *Wilson v. Allen*, 272 Ga. App. 172, 174 (1), n.4 (612 SE2d 39) (2005) ("We note that the cases cited by [appellee] in support of her argument pre-date our Supreme Court's decision in *Lee*, which clearly sets forth the elements of a claim for negligent infliction of emotional

12

negligence claim seeking only damages for emotional distress is most assuredly subject to the impact rule, this does not mean that the impact rule does not apply to negligence cases generally. Nor should it mean that it applies only to separately pleaded causes of action for "negligent infliction of emotional distress." To hold otherwise would elevate nomenclature over substance, which is the exact opposite of the construction to be applied to pleadings. *Tafel v. Lion Antique Cars & Investments*, 297 Ga. 334, 337 (2) (773 SE2d 743) (2015) ("substance, rather than nomenclature, governs pleadings") (citation and punctuation omitted). Accordingly, we disapprove the holding in *Warnock* that the impact rule can only be applied to cases in which "negligent infliction of emotional distress" was alleged in the complaint.[9]

---

distress."); *Hang v. Wages & Sons Funeral Home*, 262 Ga. App. 177, 179 (585 SE2d 118) (2003) (properly outlines impact rule and then states without citation of authority: "A party claiming negligent infliction of emotional distress must therefore show a physical impact resulting in physical injury.").

[9] We note that similarly troubling language was used in *McConnell v. Dept. of Labor*, 345 Ga. App. 669 (814 SE2d 790) (2018), in a sovereign immunity analysis. Id. at 675 (1) (b) (stating in dicta that "[t]o the extent the Department suggests that the impact rule applies to *any* claim concerning negligent conduct, this is incorrect. To the contrary, the impact rule applies specifically to claims for negligent infliction of emotional distress.") (emphasis in original). The division in which this dicta appears is physical precedent only, and the Supreme Court of Georgia later pointed out on certiorari that impact rule considerations "are irrelevant to the threshold question of whether the State has waived its sovereign immunity. . . ." *Dept. of Labor v. McConnell*, 305 Ga. 812, 814 (2) (828 SE2d 352) (2019). While the language

13

2. The mother contends that she has submitted sufficient evidence to satisfy the physical injury prong of the impact rule. First, she asserts that we should infer physical injury because the twins were in a serious car wreck. Second, she relies upon her expert's opinion to show a physical injury. Neither of these arguments persuade us that a genuine issue of material fact exists with regard to physical injury.

(a) The first argument fails in light of the direct evidence from the mother's deposition and interrogatory response that her daughters suffered no physical injury. "[C]ircumstantial evidence can be described as evidence which does not constitute direct proof with regard to the issue of fact or the hypothesis sought to be proven by the evidence; rather, circumstantial evidence constitutes proof of other facts consistent with the hypothesis claimed." (Citation and punctuation omitted.) *Callaway v. Quinn*, 347 Ga. App. 325, 327 (1) (819 SE2d 493) (2018).

> In ruling on a motion for summary judgment, a finding of fact that may be inferred from, but is not demanded by, circumstantial evidence has no probative value against positive and uncontradicted evidence that

---

quoted from *McConnell* is incorrect, we need not expressly disapprove such nonbinding dicta. See *Dunagan v. State*, 269 Ga. 590, 593 (2) (a), n.4 (502 SE2d 726) (1998) (it is not necessary to overrule mere dicta). To her credit, the mother did not rely upon *McConnell* in her briefs and argument before this Court.

14

no such fact exists, provided that the circumstantial evidence may be construed consistently with the direct evidence.

*Brown v. DeKalb County*, 333 Ga. App. 441, 444 (777 SE2d 23) (2015). In this case, the limited evidence of the circumstances of the accident in the record before us do not demand a finding that the twins were physically injured as a result and may be construed consistently with the direct evidence. Accordingly, this evidence fails to create a genuine issue of material fact regarding physical injury of the twins.

(b) With regard to the expert affidavit, the trial court noted that the expert's opinion based "upon a reasonable therapeutic probability" was "vague" and concluded that the affidavit failed to "sufficiently show that they, in fact, suffered a physical injury as a result of the collision, what that injury was, or where it was located." A court is not required to accept automatically assertions in an expert affidavit when considering a motion for summary judgment. For example, in *Sugarloaf Café v. Wilbanks*, 279 Ga. 255, 256 (612 SE2d 279) (2005), the Supreme Court of Georgia held that "expert opinion evidence cannot be used to contradict the direct evidence showing that the [bar patron] did not drive to or from [the restaurant] because it is based only on inferences and does not establish the conclusion that [the restaurant] knew [the bar patron] would be driving soon after she left." Additionally,

when the basis of [an expert's] opinion is given and it appears that it is *wholly speculative or conjectural*, it must follow that [the] opinion is without foundation and has no probative value. Speculation and conjecture by an expert is still speculation and conjecture, and will not support a verdict.

(Citation and punctuation omitted; emphasis in original.) *Layfield v. Dept. of Transp.*, 280 Ga. 848, 850 (1) (632 SE2d 135) (2006).

In this case, Dr. Hopkins-Naylor does not expressly state the basis for her opinion that the twins suffered physical symptoms of pain as a result of the collision or identify the specific physical symptoms suffered. In the paragraphs of her affidavit preceding her one-sentence conclusion, she stated: her experience in working with trauma patients; that physical-pain-inducing sensations can be experienced by those experiencing trauma; that physical injury typically heals faster than emotional trauma; that nine months after the accident the twins "presented with observable symptoms that included being on edge, nervousness, and worry"; that it "was the case" that these observable symptoms "create[d] stress and discomfort on the[ir] physical condition"; that the twins "described the collision and aftermath of the collision in terms that can be characterized as acute distress disorder"; and their symptoms of acute distress disorder (hypervigilant behavior, sleep disturbance, and avoidance, such as not going

16

to school and not getting on the bus) "began immediately after the collision, and they were both still talking about the impact when they presented to me."

From the above, we observe that the expert stated as a matter of fact that when she saw the girls nine months after the accident, they had observable symptoms ("being on edge, nervousness, and worry") that created unspecified stress and discomfort on their "physical condition." She described different symptoms (hypervigilant behavior, sleep disorder, and avoidance) as beginning immediately after the collision, but did not link any physical injury to these symptoms. Finally, she opined that the twins "suffered physical symptoms of pain and somatic pain as a result of the collision, as well as emotional harm." After carefully considering this opinion, we conclude that the expert's opinion is based on inferences from her observation of the girls nine months after the accident and that it fails to create a genuine issue of material fact on the issue of physical injury in light of the direct evidence to the contrary.

3. The mother contends in the alternative that if the impact rules applies and has not been satisfied in this case, this Court should apply the pecuniary loss rule to allow a recovery for her daughters' emotional distress. We disagree.

17

In order "[f]or a pecuniary loss to support a claim for damages for emotional distress, the pecuniary loss must occur as a result of a tort involving an injury to the person even though this injury may not be physical." (Citation and punctuation omitted.) *Oliver*, 297 Ga. at 66, n.1. The primary example of an injury to the person that is not physical has been damage to reputation. See, e.g., *OB-GYN Assoc. of Albany v. Littleton*, 259 Ga. 663, 666-667 (2) (B) (386 SE2d 146) (1989).

The mother points to the $400 charged by Dr. Hopkins-Naylor for her two interactions with the girls as a monetary loss satisfying the pecuniary loss rule. In *Owens v. Gateway Mgmt. Co.*, 227 Ga. App. 815 (490 SE2d 501) (1997), we rejected a contention that similar evidence satisfied the pecuniary loss rule. In that case, the plaintiff sought to recover in negligence for emotional injury and asserted that "medical bills and lost time from work" because of her emotional distress qualified as a pecuniary loss. Id. at 816. We rejected this argument because the monetary loss was "itself a form of emotional distress damage as opposed to pecuniary loss occurring as the result of a tort involving an injury to the person even though this injury may not be physical[,] such as an injury to reputation. To hold otherwise would be to allow bootstrapping of an extreme nature." (Citation and punctuation omitted.) Id. As the mother seeks identical "bootstrapping of an extreme nature" in this case,

we must follow *Owens*, and conclude that the pecuniary loss rule does not apply to her daughters' claims.

4. Based upon our holding in Division 3, we need not address the mother's claim that we should overrule *Shamblin*, 352 Ga. App. at 870. In *Shamblin*, we held that even if psychological treatment of a minor could satisfy the pecuniary loss rule, the minor "did not suffer a pecuniary loss, because he was not legally responsible for the cost of his treatment." Id. at 879 (4). Our conclusion in Division 3 also renders moot the mother's claim that our holding in *Shamblin* violates the equal protection of the laws found in the Constitutions of the Unites States and Georgia.

*Judgment affirmed. Reese, J., concurs. Doyle, P. J., concurs fully and specially.*

A21A1513. ELEY et al v. FEDEE.

DOYLE, Presiding Judge, concurring fully and specially.

In light of the current state of the law and the mother's record testimony[1] that her daughters sustained no physical injuries from the car accident, I concur fully in the majority opinion. Nevertheless, I write separately because I have reservations about the impact rule's application to cases such as this one, in which the injured party is not merely a bystander to negligence affecting someone else and instead is directly affected by the alleged tortious conduct, i.e., the car accident itself.

1. (a) *Appropriateness of the impact rule*. There is no dispute that the twins

---

[1] As Judge Brown notes, the appellate record contains only six pages of the mother's deposition. It was not included in the "Essential Parts of the Record" listed in the appellants' brief. But their brief refers to additional facts that might have made a difference in this appeal had those facts been supported in the record. Instead, supporting citations were to briefs filed in the trial court, which are not evidence and cannot be considered by this Court. See Court of Appeals Rule 25 (a) (1), (c). Further, while the notice of appeal indicated nothing should be omitted from the appellate record, the parties admitted at oral argument that the mother's complete deposition was not made a part of the record in the trial court.

were passengers in the car at the time of the wreck. There is also evidence that the wreck was serious and, as described by Fedee – the admittedly at-fault tortfeasor – as "hard," with the front end of the mother's car crushed, the air bags deployed, and smoke filling the passenger cabin. Both Fedee and the mother were injured; Fedee blacked out at the scene, injured her back, and was taken by ambulance to a hospital, while the mother suffered burns, bruises, an injured back, shooting pain in her leg, dizziness, vertigo, and nausea. But the record contains no evidence of a physical injury to either of the twins.[2] Even so, they both suffered mentally, and both were diagnosed with acute stress disorder after exhibiting symptoms that lasted for more than nine months following the accident.

So why is it that the law prohibits the twins from seeking to recover for the emotional distress they suffered after having been passengers in a car involved in an

---

[2] There is some evidence in the record that the mother's air bag deployed and smoke filled the car in which the twins were passengers, necessitating that they "get out" of the car. This alone, however, is not sufficient to create a question of fact as to a physical injury because there is no evidence that the twins experienced any physical symptoms from the smoke — even if one might reasonably assume that they temporarily suffered from the smoke inhalation in the form of itchy eyes or sore throats. See, e.g., *Canberg v. City of Toccoa*, 255 Ga. App. 890, 891 (567 SE2d 21) (2002) ("Canberg's eyes burned and watered from the smoke and heat of the fire."). I also agree with the majority opinion that the expert affidavit describing the twins' symptoms and diagnoses is speculative, speaks in generalizations, and falls short of establishing a question of fact on the issue of physical injury to the twins.

accident? It should not. Historically, our courts have identified three policy reasons

for applying the impact rule, none of which apply in this case:

> First, there is the fear, that absent impact, there will be a flood of litigation of claims for emotional distress. Second, is the concern for fraudulent claims. Third, there is the perception that, absent impact, there would be difficulty in proving the causal connection between the defendant's negligent conduct and claimed damages of emotional distress.[3]

Here, the damages at issue are typical of those sought by plaintiffs involved in

car wrecks. There is a "clear relationship between the plaintiff[s] being . . . victim[s]

of the breach of duty and the compensability to the plaintiff[s]."[4] And this is not a

case in which "there is no connection between the nature of the damages and the

reason for allowing the additional recovery,"[5] nor is it a case of "limitless liability out

---

[3] *Lee v. State Farm Mut. Ins. Co.*, 272 Ga. 583, 587 (II) (533 SE2d 82) (2000). Notably, the *Lee* court observed that the impact rule originated from a scenario involving mental anguish over the failure to deliver a telegraph message, which necessarily involves remote distances and remote causality. See id. at 584-585 (I), citing *Chapman v. Western Union Telegraph Co.*, 88 Ga. 763, 768 (15 SE 901) (1892).

[4] *Lee*, 272 Ga. at 587 (II).

[5] Id. at 588 (II).

3

of all proportion to the degree of a defendant's negligence."[6] The alleged mental injuries directly flow as a natural consequence of the alleged tortious conduct, and they would be legally cognizable — though no different in character — had there been a physical injury to the twins. In sum, nothing in this case suggests an expanded class of victims, a risk of fraud, or causal remoteness.

I further question the over-emphasis of our case law on whether the mental injury stems from the physical injury as opposed to the frightening circumstances of the physical impact itself. The shock of being hit hard by another car is plainly more distressing than receiving a bruise. In the context of this case, requiring a nexus between a possibly minor physical injury and a significant mental injury is disingenuous and ignores the very real mental injuries that could be suffered in similar situations, especially those involving minors.[7]

---

[6] Id. at 586 n.7. See also *Coon v. Med. Ctr., Inc.*, 300 Ga. 722, 734 (797 SE2d 828) (2017).

[7] The record is devoid of any direct testimony from the twins, who may very well have testified to the physical affects of the smoke from the air bag, as well as bumps and bruising felt by them during and immediately after the collision, as compared to their mother's testimony of their physical injuries from the collision, which was given at a deposition years later.

4

(b) *Disapproval of Warnock.* Although I believe that *Warnock v. Sanford*[8] is distinguishable, I agree that it should be disapproved to the extent that it is relied on for the proposition that the impact rule only applies to claims for "negligent infliction of emotional distress," as opposed to negligence claims seeking only emotional distress damages.[9]

2. *Pecuniary loss rule.* Finally, while I agree with the majority opinion's analysis of the pecuniary loss rule in Division 3 and that we need not overrule *Shamblin v. Corp. of the Presiding Bishop &c.*,[10] in Division 4, I question whether the

---

[8] 349 Ga. App. 426 (825 SE2d 922) (2019).

[9] The general rule in Georgia is that "[i]n a claim concerning negligent conduct, a recovery for emotional distress is allowed only where there is some impact on the plaintiff, and that impact must be a physical injury." *Lee*, 272 Ga. at 584 (I). Exceptions to this rule exist, but the rule is not limited to claims seeking "negligent infliction of emotional distress," a claim with limited recognition in Georgia. (Emphasis omitted.) *S & W Seafoods Co. v. Jacor Broadcasting of Atlanta*, 194 Ga. App. 233, 237 (3) (390 SE2d 228) (1989) ("this state recognizes no cause of action for *negligent* infliction of emotional distress"). See also *Hamilton v. Powell, Goldstein, Frazer, & Murphy*, 252 Ga. 149, 150 (311 SE2d 818) (1984) (explaining that damages for mental injuries are recoverable for intentional infliction of emotional distress but not for general negligence absent a physical injury). But see *Grizzle v. Norsworthy*, 292 Ga. App. 303, 303, 305 (a) (1) (664 SE2d 296) (2008) (stating that "Grizzle appeals the summary judgment against him on his claim of negligent infliction of emotional distress," but holding that there was a question of fact as to whether Grizzle sustained a physical injury).

[10] 352 Ga. App. 870 (836 SE2d 171) (2019).

applicability of the pecuniary loss exception should be dictated by the minor's lack of personal responsibility for paying her medical bills. If the law were to allow for a recovery of damages arising out of an emotional injury, then the fact that a parent, as opposed to a child, pays for treatment has no bearing on the reality that the child received treatment for a mental injury that is confirmed by the existence of the medical professional's bill.[11]

---

[11] This situation is no different from a plaintiff seeking to recover for the value of medical expenses incurred as a result of an injury caused by another's negligence despite the presence of medical insurance. See generally *MCG Health, Inc. v. Kight*, 325 Ga. App. 349, 353 (1) (750 SE2d 813) (2013) ("[U]nder the collateral source rule, [the plaintiff] was entitled to seek full recovery from the tortfeasor of reasonable and necessary hospital charges undiminished by insurance payments or [hospital] 'write-offs'. . . .").