175 P.3d 154

**Adolfo R. ROSALES, Petitioner–Appellee,**

v.

**David DUELL and Alejandria B. Pineda, Respondents–Appellees,**

and

**First Hawaiian Bank, Garnishee–Appellant.**

**No. 27059.**

Intermediate Court of Appeals of Hawai'i.

Jan. 9, 2008.

David L. Monroy, Thomas H. Yee, (Kobayashi, Sugita & Goda), on the briefs, Honolulu, for Garnishee–Appellant.

FOLEY, Presiding Judge, NAKAMURA and FUJISE, JJ.

Opinion of the Court by FOLEY, J.

Garnishee–Appellant First Hawaiian Bank (FHB) appeals from the "Order Re Garnishee First Hawaii [sic] Bank's Claim of Statutory Right of Offset" (Order) filed on December 14, 2004 in the Circuit Court of the First Circuit (circuit court).[1] The circuit court overruled FHB's purported right to a setoff under Hawaii Revised Statutes (HRS) § 652–2 (1993) and ordered the attorney for Petitioner–Appellee Adolfo R. Rosales (Rosales) to prepare a garnishee order against FHB.

On appeal, FHB argues that the circuit court erred in overruling FHB's right to offset deposits in the FHB accounts of Alejandria B. Pineda (Pineda) from the amount Pineda still owed on a FHB loan. FHB contends the circuit court erroneously ignored the plain language of HRS § 652–2, pursuant to which FHB had a right of setoff. FHB also maintains that in the Order, the circuit court erroneously applied and relied on *Bank of Hawaii v. DeYoung*, 92 Hawai'i 347, 992 P.2d 42 (2000), which FHB asserts is distinguishable from the instant case. FHB asks this court to reverse the circuit court's Order and reinstate FHB's right of offset.[2]

**I.**

On January 15, 2004, Rosales filed a document titled Exemplified Foreign Judgments[3]

---

1. The Honorable Sabrina S. McKenna presided.

2. Petitioner–Appellee Adolfo R. Rosales did not file an answering brief.

3. Hawaii Revised Statutes (HRS) § 658C–4(a) (Supp.2006) provides that a copy of any final foreign judgment granting recovery of money may be filed in the office of the clerk of an appropriate court and the "foreign judgment

in the circuit court to collect monies owed from two judgments he had obtained as a judgment creditor in the District Court of the Second Judicial District of the State of Colorado, City and County of Denver. The two judgments were for $1,228,924 and $1,347,114.42, respectively. The latter judgment was against Pineda.

On February 2, 2004, the circuit court granted Rosales' Ex Parte Motion for Issuance of Garnishee Summons After Judgment and filed an Order for Issuance of Garnishee Summons upon FHB. In a declaration attached to the motion, Rosales' attorney stated that FHB and other financial institutions might have Pineda's "goods and/or effects and/or moneys in their possession for safekeeping." The circuit court also issued a Garnishee Summons and Order to FHB.

On February 13, 2004, FHB filed a Disclosure of First Hawaiian Bank, in which FHB stated that Pineda had three FHB checking accounts containing $4,783.44, $62.24, and $619.58, respectively. FHB stated, however, that it had an offset of $5,465.26 for "outstanding balance(s) for loan(s)" from FHB to Pineda.

On February 24, 2004, Rosales filed an Ex Parte Motion for Examination of Person Having Knowledge of the Affairs or Property of Judgment Debtor Alejandria B. Pineda and an Ex Parte Motion for Issuance of Garnishee Summons after Judgment, asking the circuit court to order FHB to appear. The circuit court granted the motions and issued the Garnishee Summons and Order to FHB.

On October 27, 2004, FHB filed Garnishee First Hawaiian Bank's Reply Memorandum in Support of Garnishee First Hawaiian Bank's Statutory Right to Offset (Reply Memo), which provided in relevant part:

> B. By agreement between FHB and Pineda, each of [Pineda's FHB checking accounts] is governed by FHB's Deposit Account Rules (the "Rules").

shall be enforceable in the same manner as the judgment of a sister-state that is entitled to full

> C. Under the Rules, FHB specifically reserves the right to setoff against Pineda's accounts:
>
> > **Setoff.** If you ever owe us money, we may use the money from any account you have with us to pay the debt, except as limited by law. This is known as the "right of setoff." For joint accounts, we may exercise this right to setoff to repay the debt of just one of you, even if the other accountholder(s) deposited all of the funds in the account.
>
> D. On December 11, 2003, Pineda applied for and was given a loan with FHB for the principal amount of $10,030.00.
>
> E. Memorializing this loan, Pineda signed a Promissory Note, dated December 11, 2003 (the "Note").
>
> F. The Note states, in pertinent part, that FHB, as lender, reserves a right to setoff, applicable to any accounts Pineda has with FHB:
>
> > **RIGHT OF SETOFF:** To the extent permitted by applicable law, lender reserves a right of setoff in all accounts with Lender (whether checking, savings, or some other account). This includes accounts I hold jointly with someone else and all accounts I may open in the future.
> >
> > ... I authorize Lender to the extent permitted by applicable law, to charge or set off all sums owing on the debt against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.
>
> G. On February 4, 2004, FHB's Records Management Department was served with a Garnishee Summons in the above-stated matter.
>
> H. As of February 4, 2004, when First Hawaiian Bank was served with the Garnishee Summons, the sum of $8,949.98 was still owing on the Note.
>
> I. To date, Pineda has remained current in her payments on the Note.

faith and credit."

J. Of the amounts held in the above-described accounts, FHB off-set $5,465.26, broken down as follows:

| Amount | Description |
|--------|-------------|
| $ 60.00 | Service Charge for Garnishment |
| $5,406.26 | Amount applied against outstanding balance(s) for loan(s) from Garnishee to [Pineda] |

K. The off-set amount of $5,465.26 is the sum of all funds available in [Pineda's FHB checking accounts].

Rosales has not disputed these underlying facts. FHB further argued that it was entitled to offset the $5,465.26 in Pineda's FHB checking accounts from the amount Pineda still owed on her FHB loan.

On December 7, 2004, Rosales filed a memorandum in opposition to FHB's Reply Memo. Rosales argued that, pursuant to *DeYoung*, a bank could not set off funds a lendee owed a bank if the lendee was not in default on the loan or had caused no concern that he or she would fail to repay the loan.

On December 8, 2004, FHB filed a reply memorandum in support of its statutory right to offset.

On December 13, 2004, the circuit court held a hearing on the Garnishee Summons. FHB contended that in HRS § 652–2, the phrase "whether the same are at the time due or not" indicated that FHB had an offset right to the funds in Pineda's accounts, whether or not Pineda was current on her loan payments at the time of the garnishment.

In response, Rosales argued that the money in Pineda's accounts did not qualify as a demand against Pineda because although theoretically FHB could have availed itself of that money, FHB actually never would have done so.

FHB added that HRS Chapter 490, entitled Uniform Commercial Code (to which the Supreme Court of Hawai'i cited in *DeYoung*, 92 Hawai'i at 352, 992 P.2d at 47), did not apply in the instant case because FHB was not claiming the status of a secured party pursuant to that code.

On December 14, 2004, the circuit court issued its Order, which provided:

The court has reviewed the file and applicable law, and has carefully reviewed [*DeYoung*]. [FHB] argues that this case is distinguishable because it deals only with rights of a bank as a secured creditor, and not with rights of a bank that has a contractual setoff agreement.

In general, a bank may set off against the amount of a deposit that has been garnished the amount of any matured indebtedness due it by the depositor. 6 Am.Jur.2d *Attachment and Garnishment* § 408 (1999). By the same token, however, the general rule also is that claims which are contingent or uncertain may not be set off. 6 Am.Jur.2d *Attachment and Garnishment* § 406 (1999). Rather, "to be available as a setoff, a claim in favor of a garnishee against the principal debtor must be due and enforceable at the time the garnishment process is served; and under this view no setoff is allowed, even though the claim matures before disclosure or final adjudication of the garnishment proceedings. However, by virtue of some statutes a garnishee may set off any demands against the debtor whether due or not. (FN 19)" 6 Am.Jur.2d *Attachment and Garnishment* § 407 (1999).

The only case cited in footnote 19, for the proposition that "by virtue of some statutes a garnishee may set off any demands against the debtor whether due or not," is the *Levinson v. Home Bank & Trust Co.* case, 337 Ill. 241, 169 N.E. 193 (1929) relied on by [FHB].

*DeYoung*, although possibly distinguishable, strongly suggests that Hawaii would not follow this minority view.

Accordingly, the court hereby overrules [FHB's] purported right to setoff under 652–2. A garnishee order is to issue[.]

FHB timely filed its notice of appeal on January 12, 2005.

## II.

### A. Conclusions of Law

■■■ [The appellate] court reviews the trial court's COLs de novo. A COL is not binding upon an appellate court and is freely reviewable for its correctness.

Moreover, a COL that is supported by the trial court's FOFs and that reflects an application of the correct rule of law will not be overturned.

*Bhakta v. County of Maui,* 109 Hawai'i 198, 208, 124 P.3d 943, 953 (2005) (internal quotation marks, citations, and brackets in original omitted).

## B. Statutory Interpretation

Questions of statutory interpretation are questions of law to be reviewed *de novo* under the right/wrong standard.

Our statutory construction is guided by the following well established principles:

our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

*Lingle v. Hawai'i Gov't Employees Ass'n, AFSCME, Local 152, AFL–CIO,* 107 Hawai'i 178, 183, 111 P.3d 587, 592 (2005) (quoting *Guth v. Freeland,* 96 Hawai'i 147, 149–50, 28 P.3d 982, 984–85 (2001)).

## III.

On appeal, FHB argues that the circuit court erred in overruling FHB's right to offset deposits in Pineda's FHB accounts for an amount Pineda still owed on a FHB loan. FHB maintains that in the Order, the circuit court erroneously applied and relied on *DeYoung,* which FHB asserts is distinguishable from the instant case. FHB contends the circuit court erroneously ignored the plain language of HRS § 652–2, pursuant to which FHB had a right of setoff.

Section 652–2 provides in relevant part:

§ 652–2 **Garnishee, rights, duties; collection by levying officer.** The garnishee shall, when summoned before judgment rendered against his principal, if he desires, be admitted to defend his principal in the action.

... [E]very garnishee, whether summoned before or after judgment, shall be allowed to retain or deduct from the goods, effects, and credits of the defendant in his hands at the time of service *all demands against the defendant of which he could have availed himself if he had not been garnisheed, whether the same are at the time due or not,* and whether by setoff on a trial or by setoff of judgments or executions between himself and the defendant, and shall be liable only for the balance after adjustment of all mutual demands between himself and the defendant[.]

No garnishee shall be liable to anyone for the nonpayment of any sum or for the nondelivery of any goods or effects when the garnishee in good faith believes, or has reason to believe, that garnishment or other process affects the same, though such be not the case[.]

(Emphasis added.)

### A. Whether *DeYoung* is distinguishable

In *DeYoung,* the Supreme Court of Hawai'i summarized the following underlying facts:

On or about January 25, 1994, DeYoung pledged 2,125 shares of Hawaii Baking Co., Inc. (HBC) stock as a guaranty for a term loan issued to HBC by City Bank pursuant to a security agreement. The shares were subsequently delivered to City Bank in April 1994 to be held during the pendency of the term loan.

Previously, on October 26, 1990, BOH had loaned to DeYoung the principal amount of $500,000 evidenced by a promissory note executed by DeYoung and payable to BOH. When DeYoung defaulted under the parties' second note modification agreement, BOH began collection proceedings against DeYoung and then placed the matter into arbitration.

Following an arbitration hearing, a final award was entered on June 5, 1995, awarding BOH $316,312.00, plus interest. On August 17, 1995, judgment was entered confirming the arbitration award in the amount of $326,452.33.

On June 9, 1997, BOH filed an ex parte motion for issuance of a postjudgment garnishee summons. BOH served the summons on City Bank on June 17, 1997. The summons provided that garnishee must re-

spond either by appearing at a hearing or by filing a written disclosure with the court. Opting for the latter, City Bank filed a formal written disclosure on July 3, 1997, indicating that it was "in possession of that certain Stock Certificate No. 13 for 2,125 shares of the capital stock of Hawaii Baking Co., Inc. issued to [DeYoung]" and that "[s]aid Stock Certificate is pledged as collateral for certain extensions of credit from Garnishee to Hawaii Baking Co., Inc. in the amount of $500,000.00, $3,200,000.00 and $100,000.00." City Bank also asked that it be released as garnishee.

On July 8, 1997, counsel for BOH appeared before the circuit court and requested, pursuant to Hawai'i [sic] Revised Statutes (HRS) § 651–47(b) (1993), that an order issue instructing City Bank to surrender Stock Certificate No. 13 to BOH. City Bank did not appear at the hearing. Because it had filed a written disclosure and because of the "negligible interests in its possession," City Bank believed that there was no reason to appear.

92 Hawai'i at 349, 992 P.2d at 44 (footnote omitted).

The circuit court entered a garnishment order against City Bank. *Id.* City Bank filed a motion to dissolve the garnishee order pursuant to Hawai'i Rules of Civil Procedure Rule 60(b),[4] requesting relief because the pledged stock was a "contingent debt" not subject to garnishment under HRS § 652–1 (1993 & Supp.2006).[5] *DeYoung,* 92 Hawai'i

---

4. In 1997, Hawaii Rules of Civil Procedure Rule 60(b) provided, in relevant part:

   **Rule 60. RELIEF FROM JUDGMENT OR ORDER**

   . . . .

   **(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc.** On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

5. The Hawai'i Supreme Court in *Bank of Hawaii v. DeYoung,* 92 Hawai'i 347, 350 n. 2, 992 P.2d 42, 45 n. 2 (2000), noted that HRS § 652–1(a) (1993) provided in relevant part:

   **Garnishee process; "garnishee fund."** (a) Before judgment. When any goods or effects of a debtor are in the possession of an attorney, agent, factor, or trustee (in this chapter jointly and severally included in the term "garnishee"), or when any debt is due from any person (also included under the term "garnishee") to a debtor, or when any person has in the person's possession for safekeeping any moneys of the debtor, any creditor may bring the creditor's action against the debtor and in the creditor's petition for process, or by amendments of the complaint at any time before judgment, after meeting the requirements of section 652–1.5, may request the court to insert in the process a direction that service of a true and attested copy thereof be made upon the garnishee in any of the manners described under section 652–2.5 and to summon the garnishee to appear personally upon the day or term appointed in the process for hearing the action or at any other time appointed by the court and then and there on oath to answer all of the following inquiries, herein inclusively referred to as the "disclosure":

   (1) Whether at the time the copy was served on the garnishee, the garnishee had any of the goods or effects of the defendant in the garnishee's hands and, if so, the nature, amount and value thereof;
   (2) Whether at the time of service, the garnishee was indebted to the defendant and, if so, the nature and amount of the debt; or
   (3) Whether at the time of service on the garnishee, the garnishee had any moneys of the defendant in the garnishee's possession for safekeeping and, if so, the amount thereof.

   From the time of service, the garnishee shall secure in the garnishee's hands to pay such judgment as the plaintiff shall recover in the action, such of the following property or chooses then in the garnishee's possession or owing to the defendant as shall equal the amount or value specified in the summons, except what the court has expressly found to be exempt from execution pursuant to section 652–1.5(d) or (f):

   (1) The goods and effects of the defendant then in the hands of the garnishee;
   (2) Any debt then owing from the garnishee to the defendant;
   (3) Moneys of the defendant then in the possession of the garnishee for safekeeping; and
   (4) A portion of the defendant's wages, salary, stipend, commissions, annuity, or net income under a trust[.]

at 350, 992 P.2d at 45. The circuit court issued an order granting City Bank's motion to dissolve the garnishee order. *Id.* BOH filed a motion for reconsideration of the order, which the circuit court denied. *Id.* at 350–51, 992 P.2d at 45–46. BOH timely appealed the circuit court's denial. *Id.* at 351, 992 P.2d at 46.

On appeal, BOH contended the circuit court erred in granting City Bank's motion to dissolve the garnishee order because DeYoung's pledged stock was "either an 'effect' or a debt subject to garnishment under HRS § 652–1." *DeYoung*, 92 Hawai'i at 351, 992 P.2d at 46. The Hawai'i Supreme Court agreed, explaining:

> Contrary to City Bank's contention, DeYoung's interest in the pledged stock is not contingent on HBC's performance on the underlying loan obligation. Under the express terms of HRS § 490:9–311, and at the time of the service of the garnishee summons, DeYoung had an immediate, unrestricted, and non-contingent right to transfer voluntarily or involuntarily his property interest in the pledged stock subject to City Bank's security interest. *See* HRS § 490:9–311. Indeed, his interest was one that "he [could] dispose of and [that] his creditors [could] reach." *See* HRS § 490:9–311, Comment 1.

*Id.* at 353, 992 P.2d at 48 (brackets in original; footnote omitted). The supreme court held that the property interest retained by DeYoung in the shares of pledged stock, although subject to City Bank's security interest, had been properly garnished under HRS Chapter 652. *DeYoung*, 92 Hawai'i at 353, 992 P.2d at 48. The supreme court relied on HRS § 652–1, but not HRS § 652–2, in its decision. *DeYoung*, 92 Hawai'i at 351–53, 992 P.2d at 46–48.

FHB alleges that *DeYoung* is distinguishable from the instant case because (1) FHB is not claiming any rights as a secured creditor or seeking to dissolve the Pineda garnishment order and (2) in *DeYoung*, the Hawai'i Supreme Court applied HRS § 652–1, whereas FHB is alleging that it is entitled to an offset pursuant to § 652–2.

We agree that *DeYoung* is distinguishable from the instant case because in *DeYoung*,

the Hawai'i Supreme Court did not apply HRS § 652–2. The supreme court held that "DeYoung's interest in the pledged stock was garnishable under HRS chapter 652," *DeYoung*, 92 Hawai'i at 351, 992 P.2d at 46, but specifically cited to HRS §§ 651–47(b) (1993), 652–1 (1993), and 490:9–311 (1993), as well as HRS Chapter 652. *DeYoung*, 92 Hawai'i at 351–53, 992 P.2d at 46–48. The supreme court did not discuss or apply HRS § 652–2. *DeYoung*, 92 Hawai'i at 351–53, 992 P.2d at 46–48.

Regardless, it is clear from the circuit court's Order that the court did not characterize *DeYoung* as controlling, but merely followed its guidance in deciding the instant case. As this was a case of first impression, the court relied to a much greater extent on *American Jurisprudence*.

As the circuit court explained in its Order, "the general rule also is that claims which are contingent or uncertain may not be set off. 6 Am.Jur.2d *Attachment and Garnishment* § 406 (1999)." *American Jurisprudence* explains, with regard to setoffs:

> To be available as a setoff, a claim in favor of a garnishee against the principal debtor must be due and enforceable at the time the garnishment process is served; and under this view no setoff is allowed, even though the claim matures before disclosure or final adjudication of the garnishment proceedings. However, by virtue of some statutes a garnishee may set off any demands against the debtor whether due or not.

6 Am.Jur.2d *Attachment and Garnishment* § 407 (1999) (footnotes omitted).

With regard to the right of banks specifically to set off amounts, *American Jurisprudence* provides in relevant part:

> With respect to the right of a bank to set off an immature indebtedness of a depositor against such depositor's account which has been attached or garnished by a creditor, some cases have held that it may not be so set off. On the other hand, a garnishee bank has been permitted to set off an immature indebtedness under a statute allowing a garnishee to set off all

claims against the debtor whether due or not.

6 Am.Jur.2d *Attachment and Garnishment* § 408 (1999) (footnotes omitted).

In §§ 407 and 408 of *American Jurisprudence,* the authors cited to *Levinson v. Home Bank & Trust, Co.,* 337 Ill. 241, 169 N.E. 193 (1929), as an example of a case in which a garnishee had been allowed to set off claims, whether due or not, against a debtor. Also, on appeal, FHB relies on *Levinson* in support of its argument.

In *Levinson,* Fleisher had obtained a judgment against Albert and Abraham Levinson (the Levinsons) and Samuel Stein (Stein) and then filed an affidavit for garnishee summons directed to Home Bank & Trust Co. (Home Bank). *Id.* at 242, 169 N.E. at 193. Home Bank responded that Stein had $448.77 in a Home Bank account; Home Bank held Stein's note for $500, which was not due until some time after March 10, 1928; and on March 10, 1928, Home Bank had charged off this deposit to the credit of the note, leaving an indebtedness of $51.23 due to the bank from Stein. *Id.* The Municipal Court of Chicago entered judgment against Home Bank and in favor of the Levinsons and Stein for the use of Fleisher. *Id.* On appeal, the First Branch, Appellate Court, First District, affirmed. *Id.*

The Levinsons and Stein appealed. *Id.* The Illinois Supreme Court stated that "[t]he principal question involved in this case is whether or not section 13 of the Garnishment Act ... gives to a garnishee the right to set off or deduct a demand against the judgment debtor which demand is not due at the time of the service of the garnishment summons." *Levinson,* 337 Ill. at 242–43, 169 N.E. at 193. Section 13 of the Garnishment Act provided:

Every garnishee shall be allowed to retain or deduct out of the property, effects or credits in his hands all demands against the plaintiff, and all demands against the defendant, of which he could have availed himself if he had not been summoned as garnishee, *whether the same are at the time due or not,* and whether by way of setoff on a trial, or by the set-off of judgments or executions between himself and the plaintiff and defendant severally, and

he shall be liable for the balance only after all mutual demands between himself and plaintiff and defendant are adjusted, not including unliquidated damages for wrongs and injuries: [sic] Provided, that the verdict or finding, as well as the record of the judgment, shall show in all cases, against which party, and the amount thereof, any set-off shall be allowed, if any such shall be allowed.

*Levinson,* 337 Ill. at 243, 169 N.E. at 193–94 (emphasis added). The Illinois Supreme Court explained, with regard to the section of the Garnishment Act quoted above:

[T]he Legislature has used the words, "whether the same are at the time due or not." This phrase was obviously intended to have some meaning, and it cannot be disregarded or treated as a nullity. It is clear and unambiguous. It states definitively and clearly that a garnishee shall be allowed to deduct out of the property in his hands all demands which he may have against the plaintiff and the defendant, whether the same are at the time due or not.

[The Levinsons and Stein] contend that the words, "of which he could have availed himself if he had not been summoned as garnishee," must be held to limit the set-off or deduction to situations where the demand was at the time due or could be declared due by the garnishee, and that section 13 was not intended to give a garnishee any greater rights than he would have in an action between the parties direct. We cannot agree with this contention. [The Levinsons and Stein] by their argument would have us read out of the statute the words "whether due or not." The garnishee would have the right to deduct demands which were due if these words were omitted altogether; therefore such words must be given recognition and deference. The question whether or not the bank could, as between Stein and itself, have charged off the deposit against a note not due is quite irrelevant to the question in this case. The Legislature has seen fit to allow a garnishee to deduct such de-

mands though not due, and its pronouncement must be given effect.

*Id.* at 243–44, 169 N.E. at 194.

■ In the instant case, the question is whether HRS § 652–2 is similar to the garnishment statute at issue in *Levinson.* In other words, the issue is whether HRS § 652–2 allows a garnishee to offset a lendee-debtor's effects "in the garnishee's hands" when a garnishment summons is issued, whether or not payment on the debt is due at that time.

### B. The plain language of HRS § 652–2

When construing a statute, "our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself." *Lingle,* 107 Hawai'i at 183, 111 P.3d at 592 (quoting *Guth,* 96 Hawai'i at 150, 28 P.3d at 985).

*American Jurisprudence* provides that "[w]hen constructing or interpreting ... garnishment statutes, the intent of the lawmakers is sought first in the language employed and the legislature is held to mean what it plainly expressed." 6 Am.Jur.2d *Attachment and Garnishment* § 12 (1999). Further, "[s]ince the remed[y] of ... garnishment exist[s] only by statute[,] [it] must be strictly construed.... [A] garnishment statute cannot be extended to cases not enumerated in the statutes, and courts have no power to enlarge the remedy[.]" 6 Am.Jur.2d *Attach-*

*ment and Garnishment* § 13 (1999) (footnotes omitted).

HRS § 652–2 states, in relevant part, that "every garnishee, whether summoned before or after judgment, shall be allowed to retain or deduct from the goods, effects, and credits of the defendant in his hands at the time of service *all demands against the defendant of which he could have availed himself if he had not been garnisheed, whether the same are at the time due or not* [.]" (Emphasis added.)

HRS § 652–2 is similar to the statute at issue in *Levinson.* The plain language of HRS § 652–2 states that a garnishee may offset effects in its hands at the time of garnishment, regardless of whether the effects are due at the time. Therefore, we believe the circuit court erred in the instant case by denying FHB its right to offset the deposits in Pineda's accounts.

### IV.

The "Order Re Garnishee First Hawaii [sic] Bank's Claim of Statutory Right of Offset," filed on December 14, 2004, in the Circuit Court of the First Circuit is vacated, and this case is remanded for proceedings consistent with this opinion.